D.C. CONCRETE MANAGEMENT, INC., and Rafael Sanchez, Plaintiffs–Appellants and Cross–Appellees,

v.

MID–CENTURY INSURANCE COMPANY, a California entity, Defendant–Appellee and Cross–Appellant.

No. 99CA1424.

Colorado Court of Appeals, Div. IV.

Sept. 13, 2001.

Rehearing Denied Dec. 6, 2001.

Ricardo M. Barrera LLC, Ricardo M. Barrera, Denver, CO; Ogborn, Summerlin & Ogborn, L.L.C., Murray Ogborn, Michael Ogborn, Denver, CO, for Plaintiffs–Appellants and Cross–Appellees.

Levy, Morse & Wheeler, P.C., Mark R. Levy, Karen H. Wheeler, Ivan A. Sarkissian, Englewood, CO, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge KAPELKE.

In this action concerning nonpayment of a claim under an insurance policy, plaintiffs, D.C. Concrete Management, Inc. (corporation), and Rafael Sanchez, appeal the judgment entered in favor of defendant, Mid–Century Insurance Company (Mid–Century). The judgment was entered on Mid–Century's motion for judgment notwithstanding the jury's verdict. By its conditional cross-appeal, Mid–Century challenges certain of the trial court's rulings. We reverse and remand for entry of judgment on the jury's verdict.

In May 1995, Mid–Century issued an insurance policy that identified the named insured as "Rafael Sanchez DC Concrete Management," and contained a printed legend stating: "The named insured is an individual unless otherwise stated." While the policy form included boxes for indicating that the named insured was a business entity, such as

a corporation, partnership, or joint venture, none of those boxes was checked.

In September 1995, Mid–Century received a proof of loss form for a large number of items allegedly stolen from a job site. The form indicated that the insured was "Rafael—D.C. Concrete Mgmt.," and was signed by Rafael Sanchez. The total claimed loss was $264,526.17.

In 1997, the corporation and Sanchez filed this action, asserting that Mid–Century had improperly failed to take any action either approving or denying the insurance claim. The complaint sought a declaratory judgment as to the rights of the parties and an award of damages for breach of contract, bad faith breach of insurance contract, and violation of the Colorado Consumer Protection Act (CCPA).

At the close of plaintiffs' case-in-chief, the claims of Sanchez were dismissed because he testified he had suffered no personal loss as a result of the theft.

The jury returned a verdict in favor of the corporation and awarded it damages for breach of contract and bad faith breach of insurance contract. Thereafter, Mid–Century moved for judgment notwithstanding the verdict (judgment NOV), again asserting that the corporation was not an insured under the policy. The trial court granted the motion, set aside the jury's verdict, and entered judgment dismissing the corporation's claims with prejudice. In its ruling, the court found that under the unambiguous terms of the policy the corporation was not a named insured. This appeal followed.

## I.

The corporation contends that the trial court erred in granting Mid–Century's motion for judgment NOV. We agree.

■ A judgment NOV may be entered only if the evidence, when viewed in the light most favorable to the nonmoving party, is such that no reasonable person could reach the same conclusion as the jury. *Smith v. City & County of Denver*, 726 P.2d 1125 (Colo.1986); *Williams v. Continental Airlines, Inc.*, 943 P.2d 10 (Colo.App.1996).

■ Interpretation of a contract, including a contract for insurance, is a matter of law to be reviewed de novo. The terms of an insurance policy are interpreted in accordance with general rules of contract interpretation and should be construed to promote the intent of the parties. However, an insurance policy must be enforced as written unless there is ambiguity in the policy language. *Union Ins. Co. v. Houtz*, 883 P.2d 1057 (Colo.1994).

■ In the absence of any ambiguity, we must give effect to the plain meaning of the policy terms. *See Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58 (Colo. 1990). We are not at liberty to rewrite the policy. *Emenyonu v. State Farm Fire & Cas. Co.*, 885 P.2d 320 (Colo.App.1994).

Because the identification of the named insured is of paramount interest to the insurer, in interpreting insurance policies, courts have held that the term "named insured" has a restricted meaning and does not apply to any persons other than those named in the policy. *Mid–Century Ins. Co. v. Liljestrand*, 620 P.2d 1064 (Colo.1980); *see also Gen. Ins. Co. v. Smith*, 874 P.2d 412 (Colo.App.1993).

■ If a document is unambiguous, it cannot be varied by extrinsic evidence. However, a written document containing ambiguities or unclear language must be construed in accordance with the intent of the parties. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909 (Colo.1996).

■ The reviewing court need not defer to the trial court's interpretation of unambiguous language or to its finding on the issue of ambiguity. Once a contract term is found to be ambiguous, its meaning is a question of fact to be determined and reviewed in the same manner and with the same deference as other questions of fact. *Dorman v. Petrol Aspen, Inc., supra*.

■ In determining whether a contract is ambiguous, the trial court may conditionally admit extrinsic evidence. If, after considering such evidence, the court finds that the language of the contract unambiguously reflects the intentions of the parties, the court should disregard the extrinsic evidence and

give effect to the language of the contract. If, however, the court finds the contract's terms to be ambiguous, the extrinsic evidence can serve as a useful starting point in determining the actual intentions of the parties. *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229 (Colo.1998); *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo.1984); 4 Samuel Williston, *A Treatise on the Law of Contracts* § 601 (Jaeger ed., 1961).

Here, throughout the trial, the court allowed extrinsic evidence as to who was the intended insured under the policy.

The insurance agent and producer who arranged for the sale of the policy testified that he had sent Mid–Century two different versions of the application for a premium quote: one showing the applicant as "DC Concrete Management, Inc.," and the other identifying the applicant as "DC Concrete Management, Inc., Rafael Sanchez dba." The agent further testified that he had added the language "Rafael Sanchez dba" in his own handwriting, at the request of the individual who gave him the information for the application.

The insurance binder was issued in the name of "Rafael Sanchez DBA: DC Management, *Inc.*" (emphasis added).

As discussed, the policy ultimately issued by Mid–Century designated as the named insured "Rafael Sanchez DC Concrete Management," provided that "[t]he named insured is an individual unless otherwise stated," and did not indicate that the insured was a corporation.

Mid–Century's agent who submitted the application to Mid–Century for a premium quote testified that the quote was for D.C. Concrete Management, Inc., a corporation. He also acknowledged that he was aware he was "talking to a company known as D.C. Concrete Management, Inc." The request for a premium quote indicated that the company had "3 principals." The corporation paid the policy premiums.

Further, Mid–Century's claims supervisor testified that from the designation of insured on the policy, he was unable to tell whether there were two insureds or only one.

Other courts, considering language similar to that in the policy here, have found contracts to be ambiguous with respect to the identity of the named insured. In *Young v. Ray America, Inc.*, 673 S.W.2d 74, 81 (Mo. Ct.App.1984), the court found ambiguous the following named insured designation: "Dennis and Marjorie Klatt DBA Klatt Real Estate, Inc." The court stated, "We agree with plaintiff that the named insured 'Dennis and Marjorie Klatt DBA Klatt Real Estate, Inc.,' is ambiguous and uncertain. The policy may be construed as providing coverage to the Klatts individually, to Dennis Klatt Real Estate, Inc., or to both the Klatts individually and Dennis Klatt Real Estate, Inc." *See also Boling v. State Farm Mut. Auto. Ins. Co.*, 466 S.W.2d 696, 698 (Mo.1971)(finding insured designation "Hunt, Paul d/b/a Hunt Materials, Inc." ambiguous and construing it against insurer).

The designation of the named insured in the policy here is similarly unclear. From the language "Rafael Sanchez DC Concrete Management," one cannot tell whether there is one named insured or two. Nor can it be ascertained whether DC Concrete Management is intended as a d/b/a designation for an individual or refers to a separate business entity.

Accordingly, we disagree with the trial court's conclusion that the policy was unambiguous and that the corporation was not covered under the policy.

Further, where, as here, an ambiguity is found in policy language, it is to be construed against the insurer who drafted the policy and in favor of the insured. *State Farm Mut. Auto. Ins. Co. v. Stein*, 940 P.2d 384 (Colo.1997); *Bengtson v. USAA Prop. & Cas. Ins.*, 3 P.3d 1233 (Colo.App.2000).

In any event the jury apparently found here that the corporation *was* an insured under the policy and that, as the owner of the property that had been stolen, it was entitled to recover from Mid–Century. We conclude that the evidence, when viewed in the light most favorable to the corporation, supports the jury's verdict and that a reasonable person could reach the same conclusion

as that reached by the jury. *See Williams v. Continental Airlines, Inc., supra.* Therefore, under these circumstances, the trial court erred in entering a judgment NOV in favor of Mid–Century.

In light of our conclusion, we need not address plaintiffs' additional contentions.

## II.

In its cross-appeal, Mid–Century contends that even if the trial court erred in granting the motion for judgment NOV, the jury verdict may not properly be reinstated. Mid–Century urges that, for several reasons, a new trial is required. We disagree.

## A.

■ According to Mid–Century, the record does not support the amount of damages awarded by the jury for bad faith breach of insurance contract. We perceive no basis for reversal or remittitur in this regard.

The jury awarded the corporation $193,000 on the bad faith breach of insurance contract claim. Mid–Century points out that the corporation had indicated before trial that the amount of actual damages claimed was only $159,000, representing $109,000 as the value of the stolen items and $50,000 for alleged lost profits.

At trial, however, Mid–Century itself introduced a letter from plaintiffs' former attorney presenting a supplemental claim for additional damages of $414,434 for alleged additional lost profits resulting from the corporation's inability to perform two concrete foundation jobs.

Under these circumstances, there was evidence from which the jury could properly award damages of more than $159,000 on the bad faith breach of insurance contract claim.

In addition, we reject Mid–Century's assertion that the alleged loss profits and expense for rental of replacement concrete forms could not be attributable to any bad faith by Mid–Century. In making this argument, Mid–Century asserts that the claimed additional lost profits were for work to be performed in October and November 1995, before Mid–Century had engaged in any conduct that could arguably be considered to have been in bad faith. However, the record shows that the projects were to *commence* in October and November 1995, not that they would have been completed in that time frame.

Further, we reject Mid–Century's contentions that there was insufficient evidence that the concrete forms were stolen and that the jury's damage award was the product of bias, prejudice, or passion. The record contains evidence that the forms had been stolen, but none indicating that the $193,000 award was the product of bias, prejudice, or passion.

## B.

■ Mid–Century next contends that the trial court erred in allowing the corporation to present testimony that contradicted the testimony of its designated representative in a deposition taken under C.R.C.P. 30(b)(6). We perceive no basis for reversal.

Mid–Century filed a pretrial motion in limine to exclude evidence at variance with the deposition testimony of the corporation's representative. In its motion, Mid–Century claimed that the deponent had professed a lack of knowledge in several of the areas designated in the deposition notice.

At the hearing on the motion in limine, the court stated: "What was ever in the [C.R.C.P. 30(b)(6) deposition notice], [the corporation is] the one that's supposed to have knowledge on and supposed to speak about, and I think it's clear under the rules that that's the admission of the statement of the corporation, so [the deponent will] be bound by that."

The court did not expressly rule, however, that any trial testimony at variance with that of the deponent would be excluded.

Further, as the corporation notes, Mid–Century also took the deposition of the other officers or employees of the corporation who later testified at trial. Thus, Mid–Century has not shown that it was surprised or unfairly prejudiced by their trial testimony. Accordingly, we conclude that the trial court did not abuse its discretion in allowing such testimony at trial.

## C.

Mid–Century next asserts that the judgment NOV was proper because a reasonable jury could only have found that Mid–Century had established its misrepresentation or fraud defense. Again, we disagree.

### 1.

■ According to Mid–Century, a reasonable jury would have to have found that the corporation falsely represented on its insurance application that it did not perform foundation work. Mid–Century points to the deposition testimony, admitted at trial, of the corporation's representative acknowledging that the corporation in fact did such work.

However, the application, including the statement that the corporation did not do foundation work, was filled out by Mid–Century's producing agent. The individual who had supplied the application information for the corporation testified that he had made the agent aware that the corporation "would need to do foundations." Under these circumstances, the jury reasonably could have found that the agent had misunderstood or misstated the information on the application and that there was no false representation by the corporation in the application.

### 2.

■ Mid–Century also maintains that no reasonable jury could have found there had been no fraud or misrepresentation by the corporation "during the insurance claims process." We also reject this contention.

In making this argument, Mid–Century points out that the corporation provided a copy of a federal tax return in which it claimed a deduction of $292,000 for the loss of its stolen equipment that was the subject of the insurance claim. Later, it was determined that the actual return filed with the Internal Revenue Service did not include such a deduction. However, we agree with the corporation that a reasonable jury would not have been compelled to conclude that the supplying of the inaccurate tax return copy had been fraudulent.

Similarly, we reject Mid–Century's assertion that a reasonable jury would have to have found fraud in connection with an affidavit submitted by the corporation regarding some of the items claimed to have been stolen. The affidavit indicated that the affiant had been the seller of such items. At his deposition, the individual whose name appeared on the affidavit denied having signed it. Nevertheless, the jury could have determined that that individual was not credible.

Under the circumstances, it was up to the jury to weigh the evidence and make the credibility decisions. We cannot say as a matter of law that a reasonable jury would have to have found that Mid–Century established its fraud or misrepresentation defense.

## D.

Finally, Mid–Century asserts that the trial court erred in failing to give its proffered instruction on "fraud in the making of a claim." We find no basis for reversal.

■ In *Frontier Exploration, Inc. v. American National Fire Insurance Co.,* 849 P.2d 887 (Colo.App.1992), a division of this court recognized that the insured's intentional false statements in negotiating its claim with the insurer could render the insurance policy void.

Here, the court instructed the jury as follows with respect to Mid–Century's affirmative defenses: "As affirmative defenses, the defendant claims . . . plaintiff is barred from recovery based on its own conduct, including fraud, misrepresentation, and concealment of material facts in giving false testimony and/or supplying false documentation in support of its claim. . . . An affirmative defense, if proved, defeats all or part of plaintiff's claims."

■ While we agree that the court should have given an instruction specifically describing the elements of the defense of fraud in the making of an insurance claim, we conclude that any error in this respect was harmless under the circumstances.

Accordingly, the judgment is reversed, and the case is remanded to the trial court for

entry of judgment on the verdict in favor of the corporation.

Judge DAVIDSON and Judge RULAND concur.