2013 COA 173

**Jennifer HANSEN, Plaintiff–Appellee,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant–Appellant.**

**Court of Appeals No. 11CA1430**

Colorado Court of Appeals, Div. III.

Announced December 19, 2013

City and County of Denver District Court No. 10CV6246, Honorable Ann B. Frick, Judge.

Burg Simpson Eldredge Hersh & Jardine, P.C., Nelson Boyle, Englewood, Colorado, for Plaintiff–Appellee

Campbell, Latiolais & Averbach, P.C., Colin C. Campbell, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE ROY *

¶ 1 American Family Mutual Insurance Company (the insurance company), appeals the judgment and award of damages to Jennifer Hansen (the claimant) on her claim for an unreasonable delay or denial of a covered benefit under her underinsured motorist (UIM) coverage pursuant to sections 10–3–1115, –1116, C.R.S.2013 (the statutory claim). We affirm.

## I. Issues on Appeal

¶ 2 The insurance company contends that the trial court erred in: (1) concluding that the insurance policy was ambiguous; (2) refusing to award a directed verdict to insurer on both the common law bad faith claim (the common law claim) and the statutory claim when the identity of the named insured on the policy was "fairly debatable"; (3) entering judgment in favor of the claimant in the amount of $150,000 together with attorney fees and costs on the statutory claim when the jury awarded no damages; and (4) awarding the statutory penalty under section 10–13–1116(1).

## II. Background

¶ 3 On December 30, 2007, the claimant was injured while riding as a passenger in her boyfriend's vehicle when it rear-ended a pickup truck at a high rate of speed. On April 24, 2008, she filed a claim for underinsured motorist (UIM) benefits under an insurance policy issued by the insurance company (the policy). That claim remained pending while she pursued her claim against the boyfriend's insurer. In the fall of 2009, she settled her claim with the boyfriend's insurer—with the consent of the insurance company—for policy limits of $25,000.

¶ 4 The claimant then pursued her UIM claim. The insurance company's records indicated that the named insureds on the policy at the time of the accident were the claimant's mother and stepfather, William and Joyce Davis (the parents), so the company requested proof that the claimant resided with the parents on the day of the accident, which was a condition of the UIM coverage. Thereafter, the insurance company made several unsuccessful attempts to contact the claimant to discuss her claim, but she did not return messages.

¶ 5 On January 18, 2010, the claims adjuster sent the claimant a letter requesting "a recorded statement and verification of [her residence at the time of the accident] in order to determine if [she was] eligible for [UIM] Coverage under [the parents'] automobile policy." The claims adjuster advised the claimant that if it did not hear from her within thirty days, the claim would be closed. On April 27, 2010, not having heard from the claimant, the claims adjuster denied cover-

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2013.

age, stating in a letter to the claimant that the parents were the named insureds, she was not living with the parents at the time of the accident, and, thus, was not insured under the policy.

¶ 6 On August 5, 2010, the claimant filed this action against the insurance company asserting a breach of contract claim, the common law claim, and the statutory claim.

### A. Pretrial Procedural History

¶ 7 On December 8, 2010, the claimant filed a motion for partial summary judgment asserting, among other things, that the insurance policy was ambiguous as to the identity of the insured, relying, in part, on *D.C. Concrete Management, Inc. v. Mid–Century Ins. Co.*, 39 P.3d 1205 (Colo.App.2001). The claimant argued that the insurance policy was ambiguous based on lienholder's statements issued by the insurance company's local agent (the agency), copies of which were attached to the motion.

¶ 8 On December 27, 2010, the insurance company filed a cross-motion for summary judgment asserting that the policy was unambiguous, that the parents were the named insureds, that the claimant was not a resident of the parent's residence and, therefore, the policy afforded claimant no UIM coverage on the day of the accident. The insurance company asserted that the agency-issued lienholder statements attached to claimant's motion, referred to as declaration pages, could not create an ambiguity.

¶ 9 On December 29, 2010, however, the insurance company was informed that the claimant had owned the insured vehicle from the inception of the policy and on the day of the accident. Within a week of that disclosure the insurance company notified the claimant that it would reform the policy and provide coverage for her injuries.

¶ 10 On January 5, 2011, the insurance company filed a motion to withdraw its cross-motion for summary judgment relating to the ambiguity issue. In that motion, it stated, in pertinent part, as follows:

> [The insurance company] considers the coverage issue moot because it has now elected to reform [the insurance policy] issued on the 1988 Ford Escort to substitute [the claimant] for [the claimant's parents] as the named insured on the Policy.
>
> This is not a confession of [the claimant's] own Motion for Summary Judgment on the legal issue of coverage. Rather, [the insurance company] submits the circumstances of this claim permit, but do not compel [the insurance company] to reform the Policy, and that had [the insurance company] not chosen to reform the Policy, the weight of the evidence establishes [the parents] and not [the claimant] to have been the named insured. Because [the insurance company] has chosen to accept coverage through this policy reformation, it submits that the parties' previously filed cross motions for summary judgment are now rendered moot, and need not be addressed by the Court.

¶ 11 As a result of retroactively reforming the policy to recognize claimant as the insured, on February 15, 2011, the insurance company extended a settlement offer of $17,000 on the contract claim only. On March 1, 2011, six weeks before trial was scheduled to begin and eight weeks after being advised that claimant was the owner of the car, the parties entered into mediation which resulted in a settlement of the contract claim by the payment of $75,000, the maximum policy benefit.[1] The settlement amount was paid and the claimant's contract claim was dismissed. This did not, however, end the dispute over whether the insurance policy was ambiguous as to the named insured for purposes of the claimant's common law and statutory claims.

¶ 12 On March 9, 2011, the insurance company, conceding that the only claims remaining were the common law and statutory claims, filed a motion for a determination of

---

1. The policy limit for the UIM coverages was $100,000. However, the policy provided that "[t]he limits of liability of this coverage will be reduced by: ... (c) a payment made or amount payable by or on behalf of any person ... [who] may be legally liable for loss caused by an accident with an underinsured motor vehicle." Therefore the UIM policy limit and the funds available under the policy was $75,000.

law that the claimant's parents were the named insured on the insurance policy. Its argument was that: (1) the declaration pages issued by the underwriting department are the "gold standard" for determining the provisions of the insurance policy; (2) the claimant's mother had acknowledged receipt of a letter dated June 25, 2007, addressed to the parents, and designating the parents as the owners of the policy; and (3) the claimant's expert witness agreed that the underwriter file was the "gold standard" for determining the provisions of a policy and had not seen any documents challenging the underwriter file, but, nevertheless, declined to express an opinion that the policy was unambiguous.

¶ 13 On April 21, 2011, the claimant filed a trial brief on the ambiguity issue, again arguing the application of *D.C. Concrete.*

## B. Trial and Post-trial Proceedings

¶ 14 Trial commenced on April 27, 2011. On the first day the trial court heard the arguments of counsel on the ambiguity issue and concluded:

> [T]he contract of insurance here is ambiguous, that the policy is—including the additional declaration pages that is consistent with what was the case of *D.C. Concrete,* and the witness here has testified similarly to the witness in the *D.C. Concrete* case that[,] and this is the [C.R.C.P. 30(b)(6) company designated witness] from American Family ... [,] that she could not tell who the named insured was because of these different declaration pages saying its [the parents] and others saying it's Jenny Davis and the same address for the same car and others saying it's Jenny Hansen.
>
> It is clear to me so—that this contract of insurance covers—it is ambiguous as a matter of law and I am going to give the instruction. I'm also going to give the instruction that [ ] an insurance policy that is ambiguous is to be construed against the insurance company.

¶ 15 The case proceeded to trial on the common law and statutory claims. At the conclusion of trial, the jury completed three special verdict forms pertinent to this appeal.

¶ 16 First, it found that the claimant was a named insured under the insurer's auto policy.

¶ 17 Second, as to the claimant's common law claim, the jury found that the insurance company did not "unreasonably deny payment of [the claimant's] insurance claim," or "know its denial of such claim was unreasonable," or "recklessly disregard the fact that its position was unreasonable"; and, although the claimant had incurred damages, the insurance company's denial of the claim was not a cause of those damages.

¶ 18 Third, as to the claimant's statutory claim, the jury found that (1) the claimant incurred damages; (2) the insurance company denied and/or delayed payment without a reasonable basis for its action; and (3) the insurance company's unreasonable conduct was a cause of the claimant's damages and losses. In addition, the jury found that the UIM benefit for which payment was delayed or denied without reasonable basis was $0.

¶ 19 The trial court entered judgment on the jury's verdict in favor of the claimant on her statutory claim, awarded her attorney fees and costs, but did not enter a monetary award. The claimant filed a motion to amend the judgment and requested that the court award a statutory penalty of two times the covered benefit, or $150,000, under section 10–13–1116(1), in addition to attorney fees and costs. The trial court granted the claimant's motion.

¶ 20 The insurance company filed a motion to amend the judgment, arguing that the court had incorrectly calculated the statutory penalty. The trial court conducted a hearing on the insurance company's motion, denied it, and issued a final judgment in favor of the claimant for $199,683.28 in attorney fees and costs, and a $150,000 penalty under section 10–3–1116.

## III. Ambiguity

¶ 21 The insurance company argues that the trial court erred in concluding that the insurance policy was ambiguous and by referring its construction to the jury. We are not persuaded by either argument.

### A. Standard of Review

¶ 22 The interpretation of an insurance contract and the determination of whether that contract is ambiguous are questions of law, which we review de novo. *See Roberts v. Am. Family Mut. Ins. Co.*, 113 P.3d 164, 167 (Colo.App.2004), *rev'd on other grounds*, 144 P.3d 546 (Colo.2006).

### B. Applicable Law

¶ 23 Terms used in an insurance contract are ambiguous when they are susceptible of more than one reasonable interpretation. *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1091 (Colo.1991). "We review the interpretation of an insurance policy de novo, employing contract-interpretation principles. We construe the plain language of the contract to effectuate the intent of the parties, and we resolve ambiguities in favor of the insured." *Shelter Mut. Ins. Co. v. Mid–Century Ins. Co.* 246 P.3d 651, 666 (Colo.2011) (citation omitted).

### C. The Policy

¶ 24 The policy is organized into three sections: (1) the declaration page; (2) general provisions; and (3) state-specific provisions, disclosures, and endorsements.

¶ 25 A declaration page was attached to the front of the policy at the time it was issued and an amended declaration was mailed to the named insured in the normal course of business upon amendment of the policy. It contained information particular to the policy, including: (1) the policy number; (2) the named insureds; (3) effective dates; (4) a description of the insured vehicle; (5) coverages and limits of liability; (6) identification of applicable endorsements, which here include the UIM coverage; and (7) an identification of the insurance agency. In addition, it contained the following statement (the declaration statement) immediately above facsimile signatures of the president and secretary of the insurance company:

> Declarations effective on the date shown above. These declarations form a part of this policy and replace all other declarations which may have been issued previously for this policy. If [these] declarations [are] accompanied by a new policy, the policy replaces any which may have been issued before with the same policy number.

¶ 26 As pertinent here, the declaration page maintained by the insurance company and effective on the date of the accident named the claimant's parents as the named insureds with their residence address, and identified the insured vehicle as a 1994 Ford Escort. It also provided for bodily injury liability coverage with liability limits of $100,000 per person and $300,000 per accident, comprehensive coverage with a $500 deductible, and collision coverage with a $500 deductible. In addition, it referred to a UIM endorsement with liability limits of $100,000 for each person and $300,000 for each accident.

¶ 27 The insurance company presented historical declaration pages insuring the claimant's vehicle for the following effective periods: (1) August 1, 2002, to August 1, 2003; (2) October 1, 2002, to August 1, 2003; (3) April 9, 2007, to August 1, 2007; (4) November 26, 2007, to August 1, 2008; (5) April 23, 2008, to August 1, 2008; (6) January 31, 2009, to August 1, 2009; and (7) June 1, 2009, to August 1, 2009. The commencement date of the effective period changed with each declaration page to coincide with the date the declaration page was issued. As to all these declaration pages, the parents were the named insureds. The declaration page, by the language of the policy, was incorporated into the policy.

### D. Conflicting Declaration Pages and Lienholder Statements

¶ 28 The lienholder statements are very similar in appearance to the declaration pages in that they provided: (1) the policy number; (2) the named insureds; (3) effective dates; (4) a description of the insured vehicle; (5) coverages and limits of liability; (6) identification of applicable endorsements, which here include the uninsured/ underinsured motorist coverage; (7) the declaration statement followed by the facsimile signatures of the president and secretary of the insurance company; and (8) an identification of the insurance agency.

¶ 29 There are, however, administrative differences between the declaration pages and lienholder statements, to wit: (1) declaration pages were issued by the underwriting department of the insurance company; (2) the lienholder statements were generated and issued by the agency; and (3) it is undisputed that the agency had the capability to enter a named insured and the effective dates on the lienholder statements which differed from those on the then-current declaration page.

¶ 30 Neither the claimant nor the parents produced any declaration pages from their files or records. Instead, the claimant submitted lienholder statements hereinafter described, arguing that they conflicted with the declaration pages and thereby created an ambiguity.

¶ 31 The claimant initially contacted the agent in April 2008, after the accident, requesting a copy of her insurance policy. The agent telecopied a declaration page to her with effective policy dates of March 10, 2008, to August 1, 2008, which designated the parents as the named insureds.

¶ 32 However, the claimant relied on a lienholder statement dated April 9, 2007. The lienholder statement (1) related to the policy; (2) identified "Davis, Jenny" as the named insured at the parents' home address; (3) had effective dates of "December 15, 2006 to UNTIL CANCELLED"; (4) had an entry date of April 9, 2007; and (5) provided for a policy inception date of August 1, 2002. This lienholder statement suffers from several anomalies, two of which are: (1) the claimant is not, and never has been, named "Jenny Davis"; and (2) it is the only document stating that the policy remains effective "UNTIL CANCELLED." These anomalies can be attributed to the fact that the agency had authority to modify those entries.

### E. Analysis and Conclusion

¶ 33 The trial court relied, as does the claimant on appeal, on *D.C. Concrete,* 39 P.3d at 1205. In that case, the issue was whether the named insured designation of "Rafael Sanchez DC Concrete Management" on the declaration page was ambiguous and included D.C. Concrete Management, Inc. (the corporation). *Id.* at 1208. The trial court concluded it was not ambiguous and did not include the corporation. A division of this court disagreed, stating: "From the language 'Rafael Sanchez DC Concrete Management,' one cannot tell whether there is one named insured or two. Nor can it be ascertained whether DC Concrete Management is intended as a d/b/a designation for an individual or refers to a separate business entity." *Id.* There, the ambiguity arose from the designation of the named insured on the declaration page.

¶ 34 Here, any ambiguity arises not from an ambiguous designation of the named insured on the applicable declaration page, but from the preparation and delivery to the claimant of a lienholder statement by the insurance agent which was inconsistent with the declaration pages maintained by the insurance company.

¶ 35 We note that throughout the proceedings before the trial court, with rare exception, the trial court and the parties referred to the lienholder statements as declaration pages. Indeed, the lienholder statements and the declaration pages are virtually identical in many material ways. Most importantly, both contained the above-quoted declaration statement followed by facsimile signatures of the president and secretary of the insurance company.

¶ 36 The April 9, 2007, lienholder statement, in our view, despite its anomalies, creates an ambiguity in the insurance policy as to the identity of the named insured because it conflicts with the declaration pages. Accordingly, we conclude that the trial court did not err in reaching the same conclusion.[2]

### IV. Coverage Fairly Debatable

¶ 37 The insurance company argues that because the claimant's claim for coverage

---

**2.** We agree with the insurance company that the interpretation of the policy was a question of law properly addressed to the trial court and not the jury. However, its submission to the jury was harmless because it was properly instructed as to the resolution of the ambiguity. Thus, the instruction, in effect, directed the jury's verdict on this one question.

under the policy was "fairly debatable," it cannot be found to have acted in bad faith under the common law claim or unreasonably delayed or denied payment of a benefit under the statutory claim as a matter of law. With respect to the common law claim, the issue is moot. With respect to the statutory claim, we are not persuaded.

### A. The Common Law Claim

¶ 38 A case is moot when the relief sought would have no practical effect on the outcome of the controversy. *Gresh v. Balink*, 148 P.3d 419, 421 (Colo.App.2006) (citing *Crowe v. Wheeler*, 165 Colo. 289, 295, 439 P.2d 50, 53 (1968)). When subsequent events render an issue presented in litigation moot, an appellate court will decline to render an opinion on the merits. *USAA v. Parker*, 200 P.3d 350, 356 (Colo.2009) (citing *Van Schaack Holdings, Ltd. v. Fulenwider*, 798 P.2d 424, 426–27 (Colo.1990)).

¶ 39 Here, the jury found for the insurance company on the common law claim. Therefore, we conclude the issue is moot as to that claim.

### B. The Statutory Claim

¶ 40 In *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213 (Colo.App.2010), the insured brought the common law claim against a UIM insurer. The trial court granted the insurer summary judgment, concluding that the claim was fairly debatable because there was a genuine issue of material fact as to the respective fault of the insured and the third party driver, and a genuine issue of law as to the amount owed under the policy. A division of this court reversed, stating, in pertinent part:

> [W]e respectfully disagree with the district court's apparent conclusion that "fair debatability," without more, is necessarily sufficient to defeat a bad faith claim as a matter of law. In this regard, we agree with the Arizona Supreme Court's statement that "[w]hile it is clear that an insurer may defend a fairly debatable claim, all that means is that it may not defend one that is not fairly debatable. But in defending a fairly debatable claim, an insurer must exercise reasonable care and good

faith." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234, 995 P.2d 276, 279 (2000). Stated another way, fair debatability is not a threshold inquiry that is outcome determinative as a matter of law, nor is it both the beginning and the end of the analysis in a bad faith case. *See id.* at 279–80.

*Id.* at 1217–18.

¶ 41 Subsequently, in *Vaccaro v. Am. Family Ins. Grp.*, 2012 COA 9, ¶ 44, 275 P.3d 750, 761, a different division dealt with "fairly debatable" in the context of a statutory claim under section 10–3–1116. The insurer initially concluded that the insured's injuries were adequately covered by the payment made by the third party's insurer, and made a nominal offer. The insured then obtained an independent medical examination which concluded that the insured had suffered facet bone injury in his spine along with other injuries and recommended what was essentially a life-long treatment regimen. The insurer did not reconsider its settlement offer, and the insured brought a statutory claim. Following an adverse jury verdict, the insurer filed a motion for judgment notwithstanding the verdict which the trial court denied, and from that order the insurer appealed, claiming, among other things, that it was entitled to judgment as a matter of law because damages sustained by the insured were "fairly debatable."

¶ 42 The division, after discussing the term "fairly debatable" with respect to the common law claim, and relying in part on *Sanderson*, stated:

> [W]e note that a legal standard derived from common law bad faith cases does not necessarily govern plaintiff's claim under the statutes. This is particularly true because the "fairly debatable" defense goes as much to the knowledge or recklessness prong of common law bad faith as it does to unreasonable conduct. *See Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo.App.2003) ("If an insurer does not know that its denial of a claim is unreasonable and does not act with reckless disregard of a valid claim, the insurer's conduct would be based upon a permissible, albeit mistaken, belief that

the claim is not compensable."). By contrast, the only element at issue in the statutory claim is whether an insurer denied benefits without a reasonable basis. Even if plaintiff's claim for UIM benefits were "fairly debatable" in the common law context, that would not alone establish that defendant's actions here were reasonable as a matter of law. *See Sanderson*, 251 P.3d at 1218.

*Id.* at ¶ 44, 275 P.3d at 760.

¶ 43 We are persuaded by the rationale, analysis, and conclusions reached in *Sanderson* and *Vaccaro*. Therefore, we conclude that even assuming coverage here was "fairly debatable" because the policy was arguably unambiguous as to the named insured, the insurance company is not entitled to judgment as a matter of law on the claimant's statutory claim.

## V. Statutory Claim Award

¶ 44 The insurance company contends that the trial court erred in awarding two times the covered benefit to the claimant when the jury found that, although claimant had incurred damages, the amount of insurance benefit for which payment was unreasonably delayed or denied was "0." It further contends that the trial court erred in its calculation of the statutory penalty under section 10–3–11 16(1). We disagree with both contentions.

### A. Standard of Review

¶ 45 The proper interpretation of a statute is a question of law we review de novo. *See Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 969 (Colo.App.2011). Our primary goal in statutory interpretation is to determine and give effect to the intent of the legislature. *Id.* We look first to the plain and ordinary meaning of the statutory language. *Id.* If the language of the statute is plain and its meaning is clear, it must be applied as written, and we do not resort to any principle of statutory interpretation. *In re Estate of Holmes*, 821 P.2d 300, 303 (Colo.

App.1991). Statutes must be construed as whole, and, thus, a court interpreting a statute must strive to give consistent, harmonious, and sensible effect to all of its parts. *City of Grand Junction v. Sisneros*, 957 P.2d 1026, 1028 (Colo.1998).

### B. The Statute

¶ 46 Section 10–3–1115 provides, in pertinent part, as follows:

(1)(a) A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

(b) For the purposes of this section and section 10–3–1116:

(I) "First-party claimant" means an individual, corporation, association, partnership, or other legal entity asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy.

. . .

(2) Notwithstanding section 10–3–1113(3), for the purposes of an action brought pursuant to this section and section 10–3–1116, *an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.*

(Emphasis added.)

¶ 47 Section 10–3–1116 provides, in pertinent part, as follows:

(1) A first-party claimant as defined in section 10–3–1115 whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and *two times the covered benefit.*

(Emphasis added.)

### C. Jury Findings and Award

¶ 48 With respect to the statutory claim, the jury was instructed in conformity with CJI–Civ. 4th 25:4 (2010).[3] The instruction

---

3. CJI–CIV. 4th 25:4 was amended effective August 1, 2011, and was first published as CJI–CIV. 4th 25:4 (2012). CJI–CIV 4th 25:4 (2013), provides, in pertinent part, as follows:

For the Plaintiff *(name)*, to recover from the defendant *(name)*, on (his)(her)(its) claim of unreasonable (denial of) (delayed) payment of benefits, you must find all of the following

stated that the claimant must prove by a preponderance of the evidence that (1) [the claimant] had damages; (2) [the insurance company] delayed payment without a reasonable basis for its action; and (3) [the insurance company's] unreasonable conduct or position was a cause of [the claimant's] damages. The special verdict form asked the following questions, and the jury gave the following answers:

(1) Did [the claimant] have damages?

Yes

(2) Did [the insurance company] deny and/or delay payment without a reasonable basis for its action?

Yes

(3) Was [the insurance company's] unreasonable conduct a cause of [the claimant's] damages and losses?

Yes

(4) The total underinsured benefit available for [the claimant] is $75,000. What is the amount, if any, of her underinsured insurance benefit claim for which payment was delayed or denied without a reasonable basis.

"0"

¶ 49 The trial court initially entered judgment on the verdict in favor of the claimant for attorney fees and costs, but awarded no damages. The claimant filed a motion to amend the verdict and to award two times the covered benefit under section 10–3–1116(1).

¶ 50 In response to the claimant's motion, the trial court stated:

[T]he jury determined that [the insurance company] had unreasonably delayed or denied the payment of the insurance benefit. The statute expressly reads "two times the

have been proved by a preponderance of the evidence:
1. The defendant (denied) (delayed) payment of benefits to the plaintiff; and
2 The defendant's (denial) (delay) of payment was without a reasonable basis.
If you find that either of these statements has not been proved, then you verdict must be for the defendant....
The amended model instruction is not before us and we express no opinion on it. We have quoted from the Colorado Jury Instructions—

covered benefit"; it does not say "two times the amount of damages." The covered benefit here is $75,000, thus entitling [plaintiff] to recover "the penalty amount of $150,000." The court amended the jury's verdict and awarded plaintiff "the penalty amount of $150,000" in addition to her attorney fees and costs.

### D. Analysis and Conclusion

#### 1. The Benefit

¶ 51 Sections 10–3–1115 and –1116 deal with the denial, or delay in the payment of, a covered benefit.

¶ 52 In determining a UIM covered benefit the following parameters apply: (1) the damages, if any, suffered by the insured in the covered accident;[4] (2) the amounts, if any, recovered from, or on behalf of, the third-party tortfeasor(s); and (3) the UIM policy limit of liability. Then, as we previously mentioned, under this policy, (2) is subtracted from (3) and the UIM policy limit applied to the unpaid damages, if any.

¶ 53 Here, the damages suffered by the claimant in the accident were not independently determined. However, in the mediated settlement of the claimant's breach of contract claim, the insurance company agreed to pay the claimant the stated UIM policy limit and payment made by the third-party's insurer, $75,000. By doing so, the parties defined the covered benefit and disposed of the claimant's contract claim.

#### 2. Delay Damages

■ ¶ 54 First, we address the insurance company's argument that the claimant was required to prove damages attributable to the denial or delay in order to recover under sections 10–3–1115 and –1116. This argu-

Civil (2013) published by Thomson Reuters West-law.

4. The amount of the loss or damages suffered by an insured in an insured accident must first be determined by a statutory claim action, by agreement as was the case here, by arbitration if the insurance policy so provides or the parties otherwise consent, by litigation between the insured and the third party tortfeasor typically with the participation of the UIM carrier, or in some other proceeding unique to the circumstances.

ment is devoid of support in the statute. Although "delay damages" are awardable under the common law claim, the measure of recovery for the statutory claim is the "covered benefit" the payment of which was unreasonably delayed or denied.

¶ 55 Under the plain language of section 10–3–1115, the claimant was required to prove that payment of an insurance *covered benefit* was unreasonably delayed or denied. There is no requirement under the statutory claim that the claimant suffer and prove damages attributable to any unreasonable delay or denial in the payment of the "covered benefit." *Turner v. State Farm Mut. Auto. Ins. Co.,* No. 09–CV–01926 CMA–KLM, 2010 WL 3239270 (D.Colo. Aug. 12, 2010); *see generally* Erin Robson Kristofco, *CRS §§ 10–3–1115 and –1116: Providing Remedies to First–Party Claimants,* 39 Colo. Law. 69, 71 (July 2010). In our view, any reference to "damages" in the instruction and the special verdict form refers to damages incurred by the claimant in the underlying accident. Here the jury was not instructed to find, or what to consider in finding, the damages suffered by the claimant in the covered accident. To the extent the instruction and special verdict form can be read to mean "damages" otherwise, they do not reflect the clear and unambiguous statute.

¶ 56 The two parts of the statute, when taken together, expressly provide that "if the insurer [unreasonably] delayed . . . payment of a covered benefit," the claimant is entitled to an award of "two times the covered benefit."[5] §§ 10–3–1115, –1116. According to the statute the award to be made to the prevailing claimant is not the damages suffered by the claimant caused by the delay in the payment of the benefit, but rather two times the covered benefit the payment of which was unreasonably delayed or denied.

¶ 57 There is no dispute that the covered benefit under the reformed policy was $75,000. In our view, the third element in CJI–Civ. 4th 25:4 (2010), and the third special interrogatory in the special verdict requiring that the insurer caused the "plaintiff's damages," do not accurately reflect the

clear and unambiguous provisions of the statute.

¶ 58 Finally, to the extent the insurance company argues that the jury verdict is inconsistent and irreconcilable, and therefore requires reversal because it awarded "0" in response to the fourth interrogatory, under the circumstances here, we disagree. When, as here, the covered benefit had been previously determined in a mediated settlement of claimant's contract claim, the jury should not have been instructed to determine the amount of the covered benefit. Thus, the jury's answer to the fourth interrogatory can be ignored, and the remainder of the verdict is thereby reconciled.

### 3. Calculation of Penalty

¶ 59 The insurance company argues that the correct penalty under section 10–3–1116, when the claimant has already been compensated, is "an additional amount equal to the covered benefit that was unreasonably delayed in payment"; that is, the claimant cannot receive the covered benefit *and also* receive two times the amount of the benefit under section 10–3–116. We disagree.

¶ 60 Section 10–13–1116 "expressly creates a private right of action to obtain certain remedies" for the unreasonable delay or denial of benefits in violation of section 10–3–1115. *Kisselman,* 292 P.3d at 972 ("What [section 10–3–1116] does is increase the penalties on companies that unreasonably delay or deny payments by offering consumers in those situations . . . . a private right of action beyond the remedies in existing law." (quoting Hearing on H.B. 1407 Before the H. Comm. on Business Affairs & Labor, 66th Gen. Assemb., 2d Sess. (Apr. 24, 2008) (comments of Speaker Romanoff))).

¶ 61 Should an insured be successful in pursuing an action under this statute, it provides for a precise remedy: "reasonable attorney fees and court costs and two times the covered benefit." § 10–3–1116(1). That is exactly what the claimant sought and received here. We recognize that the claimant here will receive a total of three times the covered benefit; however, the awards arise

---

**5.** When Colorado House Bill 08–1407 was introduced, the relevant language read "up to two times the actual damages sustained." However, the engrossed Bill was amended to read "two times the covered benefit," and this is the version of the bill that was ultimately passed.

from different claims: one-third of it from the claimant's breach of contract claim, and two thirds from her statutory claim under section 10–3–1116.

¶ 62 The claimant's ability to recover these amounts is supported by section 10–3–1116(4), which states that "[t]he action authorized in this section *is in addition to, and does not limit or affect, other actions available by statute or common law, now or in the future.* Damages awarded pursuant to this section shall not be recoverable in any other action or claim." § 10–3–1116(4) (emphasis added). *See also Rabin v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 863 F.Supp.2d 1107, 1112 (D.Colo.2012). *Rabin* involves a scenario similar to that presented here in that the insurer paid most of the insured's fire losses prior to the action's commencement and the balance, based in its appraisers report, after the commencement of the action. The insurer there raised the same argument raised here, that is, the insured could only recover twice, not three times, the benefit. The court stated that section 10–3–1116 "explicitly contemplates and countenances that [a plaintiff] may simultaneously bring a breach of contract claim to recover certain benefits he was denied and a section 1116 claim for double those benefits *if they were unreasonably denied.*" *Rabin*, 863 F.Supp.2d at 1112 (emphasis in original).

¶ 63 To accept the insurance company's interpretation here—that section 10–3–1116 prohibits the claimant from recovering two times the covered benefit when she has already been paid the benefit—requires us to read into the statute a restriction that is not contained in the statute and is contrary to the express language of the statute. Therefore, we conclude that the trial court did not err when it awarded the claimant $150,000 under section 10–3–1116.

### VI. Conclusion

¶ 64 The judgment is affirmed.

JUDGE DAILEY and JUDGE RICHMAN concur.