ORDER AND JUDGMENT *
David M. Ebel, Circuit Judge
Defendant Keith Schwartz operated a pain-management clinic that prescribed opioids outside the usual course of medical practice. For his role in that operation, a jury convicted Schwartz of various counts related to unlawful drug distribution and money laundering, and the district court imposed a fifteen-year prison sentence. Schwartz attacks both his convictions and sentence. He argues first that the jury was irreparably tainted, even before the trial began, when the court accidentally revealed that Schwartz had prior felony convictions. Next, he challenges several evi-dentiary decisions by the district' court. Finally, he takes issue with his sentence, which was based on all the pills dispensed by the clinic, rather than merely the number of pills affirmatively proved to be illegitimate. We AFFIRM on all issues.
I. BACKGROUND
A. Unlawful Distribution of Prescription Narcotics
The operation began as a medical marijuana business in 2009, with Schwartz managing the- business and Dr. Joseph Ferrara writing the medical marijuana prescriptions. In May 2011, however, a new opportunity presented itself. Another physician, Dr. Kevin Clemmer, had recently been arrested for unlawfully distributing prescription drugs as part of his pain-management practice. Schwartz then took over the practice, including Clemmer’s former patient base, and transitioned the focus of his business from medical marijuana to prescription narcotics. Schwartz remained manager of the practice and Fer-rara was responsible for seeing patients and writing prescriptions.
To kick off the new practice, Schwartz arranged for his staff to meet with Clem-mer’s former patients in a hotel conference room. That day was described as “chaos,” as Ferrara prescribed over 5,000 dosage units to patients, most of whom received new prescriptions even though some did not bring their medical records and Schwartz’s team did not have any of the records from Clemmer’s office. Over the course of the next year and a half, Ferrara prescribed around 500,000 pills of Oxyco-done, around four times the typical volume for a pain-management practice with three or four providers. As the district court put it, the operation was “a pill mill, pure and simple.” Vol. Ill at 2630.
The jury found that Schwartz’s pain-management practice was in fact an illegal drug-distribution operation because it issued prescriptions outside the usual course of medical practice.[1] Not only did the practice dispense opioids at a volume significantly higher than the national standard *752 for safe consumption, it did so sometimes without obtaining full medical records or conducting adequate patient evaluations. Further, the practice prescribed pills while ignoring its own policies for monitoring drug abuse by its patients, overlooking positive drug screens and prescribing pills anyway, and disregarding indicators of addictive behavior. During this time period, two patients who had exhibited severe drug-seeking behavior died of drug-overdose while under the care of Schwartz’s clinic.[2]
The United States indicted Schwartz for conspiracy to distribute controlled substances, unlawful distribution of those substances, using a telephone to facilitate the conspiracy, money laundering, and conspiracy to commit money laundering. A jury trial ensued.
B. Pre-Trial Jury Instructions
After jury voir dire, the newly selected jurors left the courtroom at 10:17 a.m. on the morning of trial. The court then recessed from 10:20 to 10:49 a.m. Sometime either during that recess or immediately after court reconvened, the district judge gave the jurors a written copy of the jury instructions and began reading those instructions aloud. In the jury packet, however, the district court had inadvertently and improperly included two instructions that were previously prepared by the parties for use after trial. First, Instruction No. 16 begins: “You have heard evidence that Keith Schwartz has been convicted of a felony, that is, a crime punishable by imprisonment for a term of years.” Vol. I at 653 (emphasis added). Second, Instruction No, 19 begins: ‘You have heard evidence of other crimes, wrongs or acts engaged in by Mr. Schwartz.” Vol. 1 at 655 (emphasis added).
The district court did not notice its mistake until after it began to read aloud from Instruction No. 16 when it said, ‘You have heard evidence that Keith Schwartz—this shouldn’t be in here,” Vol. Ill at 45. The district judge then had the courtroom deputy retrieve that instruction from the jurors and directed the jury to “disregard this instruction entirely.” IcL The court continued reading until it reached Instruction No. 19 and stated, ‘You will hear evidence of other crimes— .Id. at 46. The judge again paused, told the jury to “disregard” the instruction and had the deputy remove it. Id. It is not clear from the record whether any jurors actually read the instructions contemporaneously with the district court’s out-loud articulation, but Schwartz’s counsel stated he believed that thirty to sixty seconds elapsed before the deputy retrieved the erroneous instructions from the jurors.
After the jury was dismissed, Schwartz’s counsel moved for a mistrial based on the erroneous inclusion of these instructions. Satisfied that its curative efforts were sufficient to mitigate any prejudice caused by the mistake, the district court denied the mistrial motion. After the trial, Schwartz asked for a new trial on the same grounds, but the district court denied the new-trial request.
C. Trial Testimony
During the trial, the court admitted testimony on three subjects which Schwartz now challenges on appeal. First, Schwartz contends that the testimony regarding the *753 deceased patients was improper evidence of prior bad acts and also impermissibly prejudiced the jury. Second, Schwartz argues that the testimony regarding the precursor medical marijuana business should have been excluded because it was impermissible evidence of prior bad acts and excessively prejudicial. Third, Schwartz challenges the admission of testimony from his ex-wife, Lauren Schwartz (Lauren), whom the government called as a witness. After cross-examination by the defense, the government proceeded on redirect examination to impeach Lauren, attempting to show that she did not know Schwartz as well as she purported to know him. The government asked Lauren if she knew about Schwartz’s criminal history, listing a series of offenses for which Schwartz had previously been charged. This line of questioning asked only about “charged” offenses, not convictions. Schwartz asserts on appeal that this testimony was impermissible evidence of prior bad acts, as well as improper impeachment.
D. Sentencing
After an eleven-day trial, the jury convicted Schwartz of various counts. At sentencing the district court calculated the offense level under the Sentencing Guidelines based on the weight of the total volume of prescribed pills. Schwartz objected on the ground that the calculation should have included only those prescriptions which the government affirmatively proved to be illegitimate. However, the district court disagreed, holding that all prescriptions written during the course of the conspfracy were illegal because the entire enterprise was illegal, and any activity that furthered the criminal enterprise was relevant conduct for the calculation of the sentence. The district court then arrived at a guideline range of 360 months to life, but varied downward and sentenced Schwartz to 180 months’ imprisonment.
II. DISCUSSION
A. Pretrial Inclusion of Instructions on Prior Felony Convictions in Juror Notebooks
The principal issue in this appeal is whether the district court abused its discretion in denying a mistrial or new trial after inadvertently informing the jury about Schwartz’s previous wrongful acts and a prior felony conviction. We conclude that the inclusion of these pre-trial jury instructions was harmless, so the district court did not abuse its discretion in denying a mistrial or new trial.
The Tenth Circuit has developed two competing standards for determining the impact of exposure to extraneous material on a jury. Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1241 (10th Cir. 2000). Under the first approach, a new trial is warranted when the aggrieved party shows that there is the slightest 'possibility that the exposure affected the verdict. Id. According to the second standard, however, a court will presume prejudice and grant a new trial unless the government can show the exposure was harmless. Id. The primary difference between these conflicting approaches lies in which party has the initial burden of proof. Id. at 1241-42.
There may be some future occasion to resolve this intra-circuit tension, but not today. We have repeatedly declined to resolve this conflict in cases where its resolution would make no difference in the outcome. United States v. Muessig, 427 F.3d 856, 865 (10th Cir. 2005) (“[W]e need not resolve these different approaches in this appeal” because “[ujnder either standard, we find that the exposure here was harmless.”); Ingersoll-Rand, 214 F.3d at 1242 (“Having identified this bifurcation in our case law, judicial discretion ’dictates that we leave its ultimate resolution for another *754 day.”)- Once again, it is not necessary for this panel to choose which articulation to follow because the outcome of this ease does not depend on which rule applies. Therefore, as in both Ingersoll-Rand and Muessig, we decline to resolve this uncertainty.
Under either standard, in determining the harmlessness of extraneous material revealed to a jury, we require the trial court to assess the possibility of prejudice by ‘reviewing the entire record, analyzing the substance of the extrinsic evidence, and comparing it to that information of which the jurors were properly aware.’” Ingersoll-Rand, 214 F.3d at 1242 (quoting United States v. Hornung, 848 F.2d 1040, 1045 (10th Cir. 1988)). After reviewing this record and examining the district court’s decision for abuse of discretion, United States v. Morgan, 748 F.3d 1024, 1041 (10th Cir. 2014), we determine that the inadvertent inclusion of these pre-trial jury instructions was harmless.[3]
At the outset, we presume the jurors here read the extraneous jury instructions either as the district judge read them aloud or beforehand. The record does not establish precisely when the jurors received the booklet of written instructions— it could have been during the recess or immediately thereafter. However, the record does suggest that up to a full minute may have elapsed after the district court called attention to its mistake before the courtroom deputy retrieved the erroneous instructions from the jurors, during which time the improper instructions were in the jurors’ possession. That is enough time for at least one curious juror to look down and see what all the fuss was about, and then read the extraneous instructions in their entirety.
Even assuming the jurors did read the erroneous instructions, that exposure was harmless on this record. As for Instruction No. 19, which stated that Schwartz had engaged in “other crimes, wrongs or acts,” that information was admitted properly later in the trial when the government elicited evidence of Schwartz’s prior criminal charges, and the district court in fact read aloud the exact same instruction post-trial without any objection by Schwartz. Thus, Instruction No. 19 was not really “extraneous” at all—it did not reveal anything that the jury was not already going to hear. Thus, the erroneous inclusion of Instruction No. 19 was harmless.
Instruction No. 16, which stated Schwartz had been “convicted of a felony,” was also harmless because of various mitigating considerations, as well as the ample evidence of Schwartz’s guilt. Prejudice was mitigated in several ways. First, the district court offered several curative instructions which juries are presumed to follow. Morgan, 748 F.3d at 1041-42. When the district court initially discovered its mistake, it expressly directed the jury to disregard the error. At the end of the trial, *755 the court again instructed the jury to “completely ignore” everything that the judge had earlier ordered them to disregard. Vol. Ill at 2177. And before dismissing the jury, the district court individually polled each juror to ensure that the verdicts were not based on any information which they were ordered to disregard.
Second, the jury’s exposure to this material was “one short moment” in an eleven-day trial. See Morgan, 748 F.3d at 1041 (upholding the denial of a mistrial when the jury’s potential exposure was “one short moment in a seven-day trial”). Third, because this error occurred before opening statements, the jury here likely lacked sufficient context for the mistake to make any lasting prejudicial impression. At that point, no evidence had been presented, the parties’ narratives had not been told, and deliberation did not begin for another two weeks. Fourth, any potential prejudice was at least mitigated, even if not extinguished, when the jury later heard evidence about Schwartz’s prior criminal charges, and the incremental impact of an unspecified conviction is not sufficiently prejudicial for us to find an abuse of discretion in denying the motions for mistrial and new trial.
In addition to these mitigating considerations, the substantial evidence of Schwartz’s guilt presented at trial confirms our conclusion that this error was harmless. There was ample evidence that Schwartz was knowingly distributing controlled substances outside the usual course of medical practice. To begin, he kicked off his pain-management clinic by taking over the patient base of a doctor who was arrested for unlawfully distributing pain pills. Then the practice prescribed pain pills sometimes without adequate medical records or patient evaluations and to some patients who failed drug tests. On occasion, the clinic ignored signs of drug addiction and prescribed pills anyway, and then further failed to monitor patients for drug abuse. Furthermore, the clinic dispensed opioids at a volume far exceeding the normal amount for a typical pain-management practice.
With this evidence of guilt, coupled with the various factors that would have alleviated any prejudice, we find that the erroneous inclusion of these jury instructions was harmless.
B. Admission of Testimony Regarding Deceased Patients, Precursor Marijuana Operations, and Prior Criminal Charges
We turn next to Schwartz’s evidentiary challenges to testimony admitted during trial. On appeal, he challenges the admission of testimony addressing: (1) patients who died while under his clinic’s care; (2) the precursor medical marijuana operation; and (3) his prior criminal charges. Reviewing evidentiary rulings such as these for abuse of discretion, e.g., United States v. McGlothin, 705 F.3d 1254, 1260 (10th Cir. 2013), we address each subject in turn.
1. Deceased Patients
Schwartz contends that the evidence of deceased patients violated Rules 404(b) and 403 of the Federal Rules of Evidence. Rule 404(b) bars the admission of prior bad acts to show that a person acted in accordance with a particular character trait. Fed. R. Evid. 404(b). More generally, Rule 403 permits a court to exclude evidence that is substantially more prejudicial than probative. Fed. R. Evid. 403.
As an initial matter, Schwartz waived his argument under Rule 404(b) by failing to preserve it in the district court, and then by neglecting to argue for the application of plain error on appeal. See United States v. Fisher, 805 F.3d 982, 992 (10th Cir. 2015) (finding a new appellate *756 argument waived when the party failed to argue for the application of plain-error review). Furthermore, even if this argument were not waived, it is does not overcome plain-error review because the admission of this evidence was not plainly erroneous. Rule 404(b) does not preclude the admission of other-act testimony when the other act is intrinsic to the charged offense. See, e.g., United States v. Kupfer, 797 F.3d 1233, 1238 (10th Cir. 2015). We have sometimes referred to this principle as res gestae—evidence that is “part and parcel of the proof of the offense charged in the indictment.” United States v. Ford, 613 F.3d 1263, 1267 (10th Cir. 2010) In this case, the testimony regarding the deceased patients was inextricably connected to the charged offenses because it was offered to help prove that prescriptions written to those patients were unlawful and not consistent with accepted medical norms. Thus the Rule 404(b) argument fails.
Schwartz’s Rule 403 argument, although not waived or forfeited, shares a similar fate. Evidence of patient deaths was probative of the conspirators’ wanton disregard for the drug-abusive tendencies of its patients. It showed that Schwartz knew that the clinic’s patients were misusing their prescriptions, yet the practice continued to prescribe opioids in irresponsible ways. Furthermore, it is not unfairly prejudicial for the jury to know the consequences of a defendant’s criminal behavior, especially when the district court gave a limiting instruction before and after .trial, thereby alleviating any prejudicial effect.[4] We thus cannot say that the district court went beyond its wide range of discretion in admitting this evidence.
2. Precursor Marijuana Operation
Schwartz argues similarly that the testimony regarding his precursor medical marijuana operation violated Rules 404(b) and 403. We do not agree. Again, this argument is waived because Schwartz did not object below and failed to argue on appeal for the application of plain error. Fisher, 805 F.3d at 992. Even if not waived, this argument is especially weak on the merits and thus cannot overcome plain-error review.
The Rule 404(b) charge fails because the medical marijuana operation itself was part of the specified unlawful activity underlying the money-laundering conspiracy charge. It was thus not evidence of “other acts,” but rather evidence of acts that are part of the charge of conviction. As for the Rule 403 challenge, that too fails because the evidence was not sufficiently prejudicial. The jury was informed that Schwartz’ medical marijuana operation was legal under’ state law, and again was probative of the money-laundering charges. We thus find no plain error with respect to these challenges.
3. Prior Criminal Charges
Again under Rule 404(b), Schwartz challenges the admission of his prior criminal charges during the government’s redirect examination of his ex-wife Lauren, The government called Lauren as its own witness, and Schwartz’s counsel cross-examined her. During cross-examination, Lauren testified that Schwartz believed it was important to do things “right” and *757 “proper,” Vol. Ill at 1325, would consult with lawyers to understand the legal aspects of his business ventures, and made efforts to understand applicable laws and regulations. On re-direct examination, the government questioned Lauren about how well she truly knew her ex-husband’s tendency to follow the law. The government asked whether she knew about a series of prior criminal charges including grand larceny, grand theft felony, making a false or fraudulent insurance claim, and bank fraud felony. Lauren disclaimed awareness about most of these charges.
We reject Schwartz’s Rule 404(b) challenge because that rule does not apply to impeachment evidence. E.g., United States v. Watson, 766 F.3d 1219, 1245 (10th Cir. 2014). The testimony of Schwartz’s prior criminal charges was not elicited as substantive evidence to establish a fact in issue, but rather as impeachment evidence to challenge Lauren’s credibility—it showed either that Lauren’s testimony was overstated or that her knowledge of her ex-husband’s law-abiding nature was more limited than she believed.
Further, there was nothing improper about this impeachment evidence. Questioning Lauren about her awareness of her husband’s criminal past could have cast doubt on her earlier statements that she knew her ex-husband tended to follow the law. And even if this criminal history were somewhat prejudicial, the district court did not abuse its significant discretion in finding that the prejudicial effect did not “substantially outweigh[ ]” the testimony’s probative value. Fed. R. Evid. 403. We thus decline to disturb the district court’s exercise of its discretion in this matter.
C. Calculation of Sentencing Guideline Range Based on Prescribed Pills
The district court calculated the sentencing guideline range based on all the pills prescribed by Ferrara through the pain-management clinic, rather than only those pills which the government affirmatively proved to be illegitimately prescribed. Schwartz contends that even if some prescriptions were unlawful, some were not, and the district court cannot extrapolate from a snapshot of evidence about a few patients whose treatment regimens were analyzed at trial.
But the entire volume of pills were included not based on some inference that they all must have been illegitimately prescribed, but rather because the entire operation was illegal and operating outside of the usual course of medical practice, so none of the prescriptions could have been legitimate. In other words, the district court found that each individual prescription—even the lawful ones—advanced the criminal enterprise and furthered the conspiracy to operate a sham pain-management clinic. Reviewing the district court’s factual finding for clear error, United States v. Sells, 541 F.3d 1227, 1235 (10th Cir. 2008), we conclude the district court did not clearly err in attributing the entire volume of prescribed pills to Schwartz for the purpose of calculating the sentencing guideline range.
III. CONCLUSION
For the foregoing reasons, we AFFIRM the district court on all issues.

 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

. Distributing a controlled substance is illegal unless the distributor i^ a physician prescribing such substances in the usual course of medical practice. See United States v. Moore, 423 U.S. 122, 124, 96 S.Ct. 335, 46 L.Ed.2d 333 (1975); 21 C.F.R. § 1306.04. So the ques *752 tion at trial was whether the pain-management practice conformed to standard, accepted medical norms.

. The United States did not ultimately allege that the patients died because of Schwartz's unlawful conduct, and the jury received a limiting instruction cautioning them not to infer such causation.

. Schwartz contends this was structural error because revealing his criminal history deprived him of his presumption of innocence. Structural error would mandate reversal without any inquiry into harmlessness. But we do not characterize this error as structural—or even constitutional—simply because it involved the revelation to the jury of past criminal conduct. Our case law instead requires us to analyze the harmlessness of revealing to a jury prior felony convictions of the defendant. See United States v. Wacker, 72 F.3d 1453, 1471-74 (10th Cir. 1995) (finding the disclosure of the details of prior convictions to be harmless in light of the overwhelming evidence of guilt); United States v. Hall, 625 F.3d 673, 681-82 (10th Cir. 2010) (finding the disclosure of prior convictions during jury voir dire to be harmless). Because we are not aware of any case to the contrary, we reject the invitation to deem this structural error.

. The limiting instruction provided: "You may consider evidence of these deaths in your determination of whether the Government has proven the existence of a conspiracy to distribute controlled substances beyond the scope of professional practice and for a purpose other than a legitimate medical purpose beyond a reasonable doubt. You may not consider whether the deaths of [these patients] were caused by the ingestion of controlled substances.'' Vol. III at 43-44 (emphasis added); accord id. at 2181.