McHUGH, Circuit Judge.
I. INTRODUCTION
This appeal is from a jury verdict finding that Defendant St. Paul Mercury Insurance Company (St. Paul) unreasonably delayed or denied payment of insurance benefits to Plaintiff Home Loan Investment Company (Home Loan) in violation of Colorado law. Following trial, St. Paul moved for judgment as a matter of law (JMOL) under Rule 50(b) or, alternatively, for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure. The district court denied relief, and St. Paul filed a timely appeal. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.
II. BACKGROUND
The facts of this case are largely undisputed. Home Loan, a financial institution, held a deed of trust on a property in Grand Junction, Colorado, known as White Hall. The owner had stopped making payments on the loan and offered Home Loan a deed to White Hall in lieu of foreclosure. Home Loan opted instead to work with the owner in selling the property, with the hope of being paid out of the proceeds of the sale. Because the owner indicated she could no longer pay insurance premiums on White Hall, Home Loan contacted St. Paul to obtain coverage for the value of its loan.
St. Paul and Home Loan had an existing business relationship through which St. Paul provided foreclosed property protection to Home Loan. Upon receiving Home Loan’s request to add the White Hall loan to its policy, St. Paul agreed to bind the property for ten days but indicated it would need additional information to complete the underwriting process. St. Paul then sent Home Loan a questionnaire, asking it to identify the nature of its interest in White Hall. The questionnaire provided four options to describe the nature of Home Loan’s interest:
a) Bank has actual title to the property.
b) Bank is holding the property during the statutory period of redemption.
c) Bank is the mortgagee in possession of real property with the agreement or consent of the borrower.
d) Bank is in the process of foreclosing — formal proceedings have been started and papers have been filed in the proper legal jurisdiction.
Because Home Loan did not have title, was not holding the property in a period of redemption, and was not in the formal process of foreclosing, it chose option “c.”
*1259 Based on this representation, St. Paul issued an endorsement effective January 1, 2011, adding White Hall to Home Loan’s Foreclosed Property Protection policy with a coverage limit of $471,483, the value of the White Hall loan. Home Loan’s foreclosed property protection policy defined “foreclosed property” as:
any building or structure that you:
• acquire by legal enforcement of a lien through a foreclosure proceeding;
• acquire by obtaining a deed in lieu of foreclosure; or
• hold as a mortgagee in possession.
The policy further defined “mortgagee in possession” as “a mortgagee of a building or structure who is in possession of it or who has assumed the care, custody, or control of such building or structure on behalf of the mortgagor with the agreement or assent of the mortgagor.” However, the policy did not define “possession” or “care, custody, or control.”
On September 15, 2011, White Hall was nearly destroyed in a fire. Home Loan tendered a claim to St. Paul for the loss, equal to the outstanding loan balance. On October 12, 2011, St. Paul requested additional information and documentation relating to White Hall. Specifically, St. Paul asked, “Who has possession of property or care, custody or control of the property?” Eric Daugherty, a loan officer with Home Loan, responded that Rosemarie-Glas, the owner of White Hall, had possession.
On October 19, 2011, St. Paul sent Home Loan a reservation of rights letter in which it raised “an issue that may affect coverage for [the] claim.” St. Paul identified the issue as “the definition of foreclosed property and whether the property in question qualifies under the policy as a ‘Foreclosed Property’ for the purposes of coverage.” The parties also exchanged emails on October 19. St. Paul’s claims adjuster reported that St. Paul’s review, “seems to indi--cate that no foreclosure proceedings had started on this property as of the time of the loss.” In response, Home Loan indicated it had selected “mortgagee in possession” on the questionnaire “mainly due to a process of elimination” because the other choices were inapplicable.
On November 21, 2011, St. Paul denied Home Loan’s claim because White Hall did not meet the definition of “foreclosed property” in Home Loan’s policy. The denial letter stated:
Because the property was not 1) acquired by legal enforcement of a lien through a foreclosure proceeding, 2) acquired by obtaining a deed in lieu of foreclosure, or 3) held as a mortgagee in possession, the property does not meet the definition of a Foreclosed Property under the policy. As such, we regret that we will be unable to issue any payment on your claim.
St. Paul determined Home Loan had never been a mortgagee in possession of the property and therefore White Hall did not qualify as a Foreclosed Property under the policy. With its denial letter, St. Paul included a check refunding Home Loan’s premium payment. St. Paul also amended Home Loan’s policy to remove White Hall from the list of Foreclosed Properties.
Home Loan filed suit in Colorado state court, alleging claims for common-law breach of contract and violations of sections 10-3-1115 and 10-3-1116 of the Colorado Code, which provide a statutory remedy for unreasonable delay or denial of insurance benefits. St. Paul removed the action to federal court, invoking diversity jurisdiction. Prior to trial, St. Paul moved for summary judgment, but the district court denied the motion. At trial, St. Paul argued Home Loan never had “possession” or “care, custody, or control” of White Hall sufficient to trigger coverage under the policy. St. Paul further maintained that, *1260 because its coverage decision was “fairly debatable,” it could not have acted unreasonably for purposes of the Colorado statutes.
After Home Loan rested, St. Paul renewed its summary judgment motion and also moved for JMOL on the grounds that: (1) Home Loan had not established it had possession or care, custody, or control of White Hall; (2) Home Loan had not established St. Paul acted unreasonably in denying the claim; and (8) Home Loan’s claim under section 10-3-1116 applied only to claims handling, not underwriting activities. The district court denied St. Paul’s motions.
The jury returned a verdict in favor of Home Loan and against St. Paul on both the common-law breach of contract claim and the statutory claim. Following the verdict, St. Paul moved for JMOL under Rule 50(b) or, alternatively, for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure. The district court denied both motions. St. Paul now appeals. St. Paul does not challenge the jury’s verdict on Home Loan’s breach of contract claim. Thus, the only questions before this court concern Home Loan’s statutory bad faith claim under Colorado law.
III. DISCUSSION
St. Paul raises three arguments on appeal. First, St. Paul asserts the district court erred in denying its motion for JMOL because the denial of Home Loan’s claim was reasonable as a matter of law. Alternatively and relatedly, St. Paul contends the district court erroneously instructed the jury on the standard for assessing the reasonableness of St. Paul’s denial of Home Loan’s claim, thereby warranting a new trial. Second, St. Paul argues sections 10-8-1115 and 10-3-1116 of the Colorado Code provide a remedy only for unreasonable claims-handling activity. And because Home Loan’s allegations implicated only St. Paul’s underwriting practices, St. Paul claims the district court should have granted JMOL. In the alternative, St. Paul argues it is entitled to a new trial because the overwhelming evidence introduced at trial related to its underwriting practices, not its claims-handling practices. Finally, St. Paul argues the district court erred in calculating the amount of damages recoverable under section 10-3-1116. Specifically, St. Paul asserts that section 1116 entitles plaintiffs to a recovery totaling two times the covered benefit and the district court erroneously awarded Home Loan a total of three times the covered benefit. We address each argument in turn. We then explain why we part from the position advanced by the dissent: that St. Paul is entitled to JMOL because the evidence was insufficient as a matter of law to support a finding that it acted unreasonably in denying Home Loan’s claim. Although we agree with the dissent that the resolution of this issue is difficult, we ultimately conclude that St. Paul did not raise in the district court or on appeal a general sufficiency of the evidence argument. As a result, we do not reach this issue.

A. Issues on Appeal

1. Under Colorado law, denial of a fairly debatable claim may nonetheless be unreasonable.
St. Paul’s first argument on appeal is that, because its coverage decision was “fairly debatable,” it was, as a matter of law, not unreasonable. Specifically, St. Paul argues a claim’s fair debatability is outcome determinative because, under Colorado law, an insurer cannot act unreasonably in denying a fairly debatable claim. In response, Home Loan argues that a claim’s “fair debatability” is merely one factor in the overall analysis of whether the insurer *1261 acted reasonably in delaying or denying coverage.
We review a district court’s denial of a Rule 50 motion de novo, applying the same standards as the district court. Elm Ridge Expl. Co. v. Engle, 721 F.3d 1199, 1216 (10th Cir.2013); Hardeman v. City of Albuquerque, 377 F.3d 1106, 1112 (10th Cir.2004) (applying de novo review to denial of Rule 50(b) motion). “In a diversity case such as this one, the substantive law of the forum state governs the analysis of the underlying claims.... ” Eureka Water Co. v. Nestle Waters N. Am., Inc., 690 F.3d 1139, 1145 (10th Cir.2012) (omission in original). “A party is entitled to JMOL only if the court concludes that all of the evidence in the record reveals no legally sufficient evidentiary basis for a claim under the controlling law.” ClearOne Commc’ns, Inc. v. Bowers, 643 F.3d 735, 771 (10th Cir.2011) (brackets and ellipsis omitted). “Drawing all reasonable inferences in favor of the nonmoving party, we thus will reverse the district court’s denial of the motion for JMOL if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion.” Id. at 772 (ellipsis omitted).
Colorado law provides that a “person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.” Colo. Rev. Stat. § 10-3-1115(l)(a). The statute further states, “[A]n insurer’s delay or denial was unreasonable if the insurer delayed or denied authorizing a payment of a covered benefit without a reasonable basis for that action.” Id. § 1115(2). The parties’ dispute centers on whether denial of a fairly debatable claim is per se reasonable under Colorado law.
The Colorado Supreme Court has yet to rule on the issue,[1] but the Colorado Court of Appeals has addressed it on several occasions, not always consistently. For example, several Colorado Court of Appeals cases have implied, without squarely holding, that a claim’s “fair debatability” is sufficient, by itself, to render an insurer’s denial of that claim reasonable. See Zolman v. Pinnacol Assurance, 261 P.3d 490, 496-97 (Colo.App.2011); Pham v. State Farm Mut. Auto. Ins. Co., 70 P.3d 567, 572 (Colo.App.2003); Brennan v. Farmers All. Mut. Ins. Co., 961 P.2d 550, 557 (Colo. App.1998); Brandon v. Sterling Colo. Beef Co., 827 P.2d 559, 561 (Colo.App.1991). In Zolman, the Colorado Court of Appeals stated, “Under Colorado law, it is reasonable for an insurer to challenge claims that are ‘fairly debatable.’” 261 P.3d at 496. Although this language could be read to imply that fair debatability is sufficient— standing alone — to render an insurer’s denial of a claim reasonable as a matter of law, subsequent Colorado Court of Appeals decisions have expressly limited the holding in Zolman. For example, the court in Vaccaro v. American Family Insurance Group stated, “Zolman ... stand[s] for the proposition that a genuine difference of opinion over the value of an insurance claim weighs against a finding of bad faith,” but also emphasized that “fair de-batability is not a threshold inquiry that is outcome determinative as a matter of law.” *1262 275 P.3d 750, 759-60 (Colo.App.2012); see also Fisher v. State Farm Mut. Auto. Ins. Co., — P.3d -, -, 2015 WL 2198515, at *4 (Colo.App.2015); Hansen v. Am. Family Mut. Ins. Co., — P.3d-, -, 2013 WL 6673066, at *6-7 (Colo.App. 2013), rev’d on other grounds, 375 P.3d 115, 2016 WL 3398507 (Colo.2016); Schuessler v. Walter, 310 P.3d 151, 162 (Colo.App.2012) (“[T]he defense of fair de-batability is not a threshold inquiry that is outcome determinative as a matter of law; it is not necessarily sufficient, standing alone, to defeat a bad faith claim.”).
Thus, the Colorado Court of Appeals has expressly rejected the argument St. Paul now advances.[2] In the absence of contrary authority from the Colorado Supreme Court, we .follow the well-reasoned approach of the Colorado Court of Appeals and hold the district court did not err in denying St. Paul’s motion for JMOL on these grounds.
2. Sections 10-3-1115 and 10-3-1116 are not limited to claims handling.
St. Paul next argues sections 10-3-1115 and 10-3-1116 provide a remedy for unreasonable conduct only with respect to claims-handling activities. Based on this reading of the statutes, St. Paul argues it was entitled to JMOL because the evidence at trial related solely to its underwriting practices, not its claims-handling activity. But nothing in the language of either statute supports such a limited application.
The Colorado General Assembly has expressed its intent “to regulate trade practices in the business of insurance by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices, and by prohibiting the trade practices so defined or determined.” Colo. Rev. Stat. § 10-3-1101 (emphasis added). Section 10-3-1115 creates a remedy for such unfair practices, providing that “[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.” Id. § 10-3-1115(l)(a) (emphasis added). Colorado law defines “insurance” as “a contract whereby one, for consideration, undertakes to indemnify another or to pay a specified or ascertainable amount or benefit upon determinable risk contingencies, and includes annuities.” Id. § 10-1-102(12). Colorado further defines “insurer” as “every person engaged as principal, indemnitor, surety, or contractor in the business of making contracts of insurance.” Id. § 10-1-102(13) (emphasis added).
The sweeping language of these statutes makes clear Colorado’s intent to capture all aspects of the insurance relationship and to impose liability for both bad faith breach of the obligation to indemnify— underwriting — and bad faith breach of the obligation to pay a specified or ascertainable amount — claims handling. Under the plain language of section 10-3-1115 and related statutes, a plaintiff may recover *1263 whether a claim is unreasonably delayed or denied because the insurer believes the policy should never have been issued or because of some issue related to the claim itself. So long as the jury is convinced the claim was unreasonably delayed or denied, the plain language of section 10-3-1115 provides a remedy. Accordingly, we hold liability under sections 10-3-1115 and 10-3-1116 is not limited to claims-handling conduct.
3. The district court properly calculated Home Loan’s damages under section 10-3-1116.
St. Paul’s final argument on appeal concerns the proper interpretation of section 10-3-1116. The district court awarded Home Loan damages totaling three times the amount of the benefit denied by St. Paul — the covered benefit to which Home Loan was entitled for breach of contract plus a statutory bad faith penalty pursuant to section 10-3-1116 equal to two times the covered benefit. St. Paul argues that a proper interpretation of section 10-3-1116 would entitle Home Loan to recover only its covered benefit plus a penalty equal to that benefit. That is, St. Paul argues Home Loan was limited to a total recovery of two times the covered benefit.
Section 10-3-1116 governs the remedies available when an insurer unreasonably delays or denies benefits. See Colo. Rev. Stat. § 10-3-1116. It provides:
A first-party claimant ... whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit.
Id. § 10-3-1116(1) (emphasis added). The statute further provides:
The action authorized in this section is in addition to, and does not limit or affect, other actions available by statute or common law, now or in the future. Damages awarded pursuant to this section shall not be recoverable in any other action or claim.
Id. § 10-3-1116(4) (emphasis added).
The Colorado Supreme Court has not yet ruled on the proper interpretation of section 10-3-1116, but the Colorado Court of Appeals has considered and rejected an argument identical to that advanced by St. Paul. See Hansen v. Am. Family Mut. Ins. Co., — P.3d-,-, 2013 WL 6673066, at *10-11 (Colo.App.2013), rev’d on other grounds, 375 P.3d 115, 2016 WL 3398507 (Colo.2016).[3] The Hansen court first noted that section 10-3-1116 “expressly creates a private right of action to obtain certain remedies for the unreasonable delay or denial of benefits in violation of section 10-3-1115” and unambiguously provides a remedy for successful plaintiffs of “reasonable attorney fees and court costs and two times the covered benefit.” Id. at-(internal quotation marks omitted). The court then explained that the penalty awarded under section 10-3-1116 arises from a claim separate from the original breach of contract claim — the insurer’s unreasonable delay or denial of benefits. See id. Thus, the court of appeals held the statute provides for an award of a penalty equaling two times the covered benefit in addition to a plaintiffs damages awarded in a breach of contract claim. Id. at-.
Although this court is not bound to follow the Colorado Court of Appeals’ reasoning, we should do so unless we are convinced that reasoning is incorrect. See Webco Indus., Inc. v. Thermatool Corp., 278 F.3d 1120, 1132 (10th Cir.2002). Based *1264 on the plain language of section 10-3-1116, we are persuaded by the Colorado Court of Appeals’ reasoning and therefore affirm the district court’s damages calculation.
Section 10-3-1116 provides that a plaintiff whose benefits have been unreasonably delayed or denied can recover “reasonable attorney fees and court costs and two times the covered benefit.” Colo. Rev. Stat. § 10-3-1116(1) (emphasis added). Subsection (4) unambiguously states that an action to recover statutory bad faith damages under section 10-3-1116 “is in addition to, and does not limit or affect, other actions available by statute or common law, now or in the future.” Id. § 10-3-1116(4) (emphasis added). The plain reading of these two subsections indicates a plaintiff can bring a common law breach of contract claim, recover contract damages, and bring a claim for an insurer’s unreasonable delay or denial of benefits in addition to the breach of contract claim. That is, the penalty imposed by section 10-3-1116 is in response to an insurer’s unreasonable delay or denial of a claim, something separate and apart from the damages to which a plaintiff is entitled for a breach of contract. Thus, if the insurer paid the claim but unreasonably delayed doing so, the insured may still bring a claim under section 10-3-1116(1). And the penalty for such unreasonable conduct is specified as “two times the covered benefit.” See id. § 10-3-1116(1).
Despite this statutory mandate, St. Paul argues Home Loan’s damages were limited to a total of two times the covered benefit for both its breach-of-contract and section 10-3-1116 claims. Specifically, St. Paul argues the last sentence of subsection (4) contains an “offset clause” that limits the right of plaintiffs to recover in any other claim or action. The last sentence of subsection (4) reads, “Damages awarded pursuant to this section shall not be recoverable in any other action or claim.” Colo. Rev. Stat. § 10-3-1116(4). St. Paul argues that “it is clear that while the first sentence of § 10-3-1116(4) does not prohibit multiple actions for the covered benefit from being brought, the second sentence prohibits multiple recoveries of the same ‘covered benefit’ as damages.” That is, St. Paul argues Home Loan could not recover its covered benefit in its breach of contract claim in addition to the damages authorized by section 10-3-1116.
But St. Paul’s reading is contrary to the plain language of the statute because it ignores subsection (4)’s focus on damages “awarded pursuant to this section.” Id. (emphasis added). Home Loan’s recovery of the benefit owed was not awarded pursuant to section 10-3-1116; it was awarded pursuant to Home Loan’s common law claim for breach of contract. The damages awarded pursuant to section 10-3-1116 were a penalty for the insurer’s unreasonable delay or denial of that benefit. The second sentence of subsection (4) can be read to bar double recovery in a common law bad faith or other tort claim if the plaintiff has already recovered pursuant to section 10-3-1116. But the damages awarded pursuant to section 10-3-1116 are not coextensive with the contract damages awarded under a common law breach of contract claim. Accordingly, we affirm the district court’s award of damages under section 10-3-1116.
In summary, we agree with the district court that an insurer may act unreasonably even when a claim is fairly debatable. Therefore, we affirm the district court’s denial of St. Paul’s motion for JMOL and its denial of St. Paul’s motion for a new trial based on its challenge to the jury instruction on this issue. We also hold that liability under sections 10-3-1115 and 10-3-1116 is not limited to claims-handling activity, and therefore the district court properly denied St. Paul’s motion for *1265 JMOL on this ground. Finally, we hold that the district court properly calculated Home Loan’s damages by awarding it the amount of the insurance benefit owed on the breach of contract claim and an additional two times that benefit under section 10-3-1116.

B. Issues Raised by the Dissent

The dissent would not reach these issues. Instead, the dissent would conclude St. Paul is entitled to judgment as a matter of law on Home Loan’s claims because the evidence at trial could not support a finding that St. Paul acted unreasonably in denying Home Loan insurance coverage for White Hall. Because our reading of the record convinces us St. Paul neither preserved a sufficiency-of-the-evidence challenge before the district court nor argued sufficiency of the evidence before this court on appeal, we respectfully disagree.
1. St. Paul did not properly preserve a sufficiency-of-the-evidence challenge before the district court.
“Federal Rule of Civil Procedure 50 sets forth the procedural requirements for challenging the sufficiency of the evidence in a civil jury trial and establishes two stages for such challenges — prior to submission of the case to the jury, and after the verdict and entry of judgment.” Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 399, 126 S.Ct. 980, 163 L.Ed.2d 974 (2006). Rule 50(a) allows a party to challenge the sufficiency of the evidence prior to submitting the case to the jury.[4] See Fed. R. Civ. P. 50(a); Unit-hemn, 546 U.S. at 399, 126 S.Ct. 980. But if the court does not grant a party’s Rule 50(a) motion, “Rule 50(b) ... sets forth the procedural requirements for renewing a sufficiency of the evidence challenge after the jury verdict and entry of judgment.”[5] Unitherm, 546 U.S. at 400, 126 S.Ct. 980.
The Supreme Court has instructed that compliance with the requirements of Rule 50 is mandatory.[6] Id. at 404, 126 S.Ct. 980 *1266 (“[F]ailure to comply with [Rule 50] forecloses [a party’s] challenge to the sufficiency of the evidence-”). Indeed, the Court has suggested on several occasions that federal appellate courts lack the power to set aside a verdict on sufficiency of the evidence grounds, absent a Rule 50-compliant challenge before the district court. See, e.g., id. at 405, 126 S.Ct. 980 (noting that courts of appeals are “powerless” to grant relief absent a properly filed Rule 50(b) motion); Ortiz v. Jordan, 562 U.S. 180, 189, 131 S.Ct. 884, 178 L.Ed.2d 703 (2011) (“Absent [a Rule 50(b)] motion, we have repeatedly held, an appellate court is ‘powerless’ to review the sufficiency of the evidence after trial.” (internal quotation marks omitted)); Johnson v. New York, N.H., & H.R. Co., 344 U.S. 48, 50, 73 S.Ct. 125, 97 L.Ed. 77 (1952) (“[I]n the absence of a [Rule 50(b) motion] made in the trial court within ten days after reception of a verdict the rule forbids the trial judge or an appellate court to enter such a judgment.”); Cone v. W. Va. Pulp & Paper Co., 330 U.S. 212, 218, 67 S.Ct. 752, 91 L.Ed. 849 (1947) (“In the absence of [a Rule 50(b) ] motion, we think the appellate court was without power to direct the District Court to enter judgment contrary to the one it had permitted to stand.”); see also Kelley v. City of Albuquerque, 542 F.3d 802, 817 n. 15 (10th Cir.2008) (discussing, but not deciding, whether a party’s failure to file a proper Rule 50(b) motion deprives the appellate courts of jurisdiction to entertain a sufficiency-of-the-evidence challenge). Moreover, this court has held that a party may only pursue a ground for relief in a post-verdict Rule 50(b) motion if that same ground for relief was first asserted in a preverdict Rule 50(a) motion. Elm Ridge Expl. Co. v. Engle, 721 F.3d 1199, 1219 (10th Cir.2013) (“[T]he precise subject matter of a party’s Rule 50(a) motion ... cannot be appealed unless that motion is renewed pursuant to Rule 50(b).” (alteration in original)); Marshall v. Columbia Lea Reg’l Hosp., 474 F.3d 733, 738-39 (10th Cir.2007) (“The renewed motion under Rule 50(b) cannot assert grounds for relief not asserted in the original [Rule 50(a)] motion.”). Thus, for this court to entertain a sufficiency-of-the-evidence challenge, St. Paul must have properly presented such a challenge to the district court first in a preverdict Rule 50(a) motion and then in a renewed Rule 50(b) motion following the verdict.[7]
St. Paul filed a Rule 50(a) motion at the close of Home Loan’s case in chief. In that motion, St. Paul did raise a challenge to the sufficiency of the evidence, arguing, “No Reasonable Jury Could Find Thát [St. Paul] Denied Home Loan’s Claim Without a Reasonable Basis.” But at the hearing on St. Paul’s mid-trial Rule 50(a) motion, St. Paul advanced a new argument. St. Paul argued the jury should be precluded from considering evidence of its underwriting practices when determining whether it could be held liable under sections 10-3-1115 and 10-3-1116. Under St. Paul’s reading of the statutes, a claim for bad faith denial of benefits can be predicated only on an insurer’s claims-handling behavior and, therefore, evidence about an insurer’s underwriting practices is irrelevant to a statutory bad faith claim under Colorado law. The district court construed this argument not as a challenge to the sufficiency of the evidence, but as a request to limit the scope of the evidence the *1267 jury could consider. As such, the district court understood St. Paul to be advancing an argument distinct from a sufficiency-of the-evidence challenge.
Following trial, St. Paul again moved for JMOL under Rule 50(b). This postverdict motion focused entirely on St. Paul’s new argument concerning the scope of the statutory claim for bad faith.[8] That is, St. Paul moved for postverdict JMOL “on Home Loan’s statutory claim under § 10-8-1116(1) because an analysis of the cause of action created by the Colorado General Assembly in §§ 10-3-1115 and 10-3-1116, including the statutory language, the legislative scheme, and the case law construing it, confirms that § 10-3-1116(1) provides a remedy solely for unreasonable conduct in the handling of claims, not for underwriting practices or conduct.” And because, in St. Paul’s view, the evidence at trial related solely to its underwriting practices— and not its claims-handling conduct — it was entitled to JMOL.
But as the district court recognized, this argument is separate and distinct from a suffieiency-of-the-evidence challenge. Indeed, St. Paul never argued there was an insufficient evidentiary basis for the jury’s verdict, taking the evidence introduced at trial as a whole. Rather, St. Paul advanced a legal argument relating to the scope of liability imposed by the Colorado General Assembly in sections 10-3-1115 and 10-3-1116. Specifically, St. Paul argued that — if the district court disregarded evidence St. Paul characterized as relating to its underwriting practices — there was no evidence to support a finding that it unreasonably denied Home Loan’s claim. But St. Paul’s argument required the district court to accept both its characterization of the evidence as pertaining solely to underwriting and its legal theory that liability under sections 10-3-1115 and 10-3-1116 could be premised only on evidence of an insurer’s claims-handling practices. Notably, St. Paul did not argue that Home Loan failed to produce sufficient evidence of St. Paul’s unreasonable denial of benefits regardless of whether the district court accepted St. Paul’s statutory argument.
The dissent asserts that St. Paul’s legal argument relating to the scope of liability under sections 10-3-1115 and 10-3-1116 was premised on “St. Paul’s larger point ... that its justifications for denying the claim could not be regarded as unreasonable under the Colorado statutes.” Respectfully, we disagree. St. Paul’s postver-dict Rule 50(b) motion conceded that Home Loan introduced evidence of what St. Paul characterized as “underwriting practices” during trial. Far from contending that no evidence of unreasonable conduct was introduced, St. Paul’s postverdict Rule 50(b) motion tried to discount that evidence based on a distinction between evidence of claims-handling practices and underwriting practices. As discussed, under St. Paul’s erroneous legal theory, sections 10-3-1115 and 10-3-1116 apply only to claims-handling conduct. See supra Part III.A.2. Indeed, St. Paul conceded Home Loan had introduced evidence at trial relevant to whether St. Paul had acted unreasonably,[9] but St. Paul argued that evidence *1268 was relevant only to its underwriting activity, not its claims-handling activity. Accordingly, St. Paul never argued the evidence, if deemed relevant, was insufficient to support a finding that it unreasonably delayed or denied payment of Home Loan’s claim.[10]
The dissent also asserts Home Loan waived any possible objection to St. Paul’s failure to comply with the requirements of Rule 50 because Home Loan did not argue in its response brief to this court that St. Paul failed to preserve its sufficiency-of-the-evidence claim before the district court. But as explained below, in addition to not preserving a sufficiency-of-the-evidence claim before the district court, St. Paul also waived any such claim on appeal by failing to argue sufficiency of the evidence in its opening brief. See infra Part II. Rule 28 requires appellants to identify in their opening brief the issues and arguments they wish to raise on appeal. See Fed. R. App. P. 28(a)(8). And “[t]he omission of an issue in an opening .brief generally forfeits appellate consideration of that issue.” Bronson v. Swensen, 500 F.3d 1099, 1104 (10th Cir.2007). This rule makes sense.
We do not require appellees to affirmatively object to all arguments appellants fail to raise in their opening briefs. To do so would unfairly place the burden on ap-pellees to anticipate which arguments, not advanced in the district court or in an appellant’s opening brief, the appellant might choose to raise for the first time in a reply brief. See WildEarth Guardians v. EPA, 759 F.3d 1196, 1204 (10th Cir.2014) (recognizing that inadequately raised arguments fail to place opposing counsel on notice); Water Pik, Inc. v. Med-Systems, Inc., 726 F.3d 1136, 1159 n. 8 (10th Cir. 2013) (declining to address argument not raised in opening brief because opposing party was deprived of opportunity to respond). Here, St. Paul abandoned its sufficiency-of-the-evidence claim in the district court and did not raise such a challenge on appeal. See infra Part III.B.2. Home Loan therefore had no reason to raise a failure of preservation objection to our consideration of the argument on appeal. Although an appellee can waive a nonpreservation *1269 argument by failing to object to an argument that is raised for the first time on appeal, we do not place on appellees the burden of anticipating which unpreserved arguments the appellants — or in this case the appellate court — might consider despite not having been raised at all. Because St. Paul compounded its failure to preserve a sufficiency-of-the-evidence claim in the district court by failing to raise such a claim in its opening brief, Home Loan was under no obligation to object on preservation grounds.[11]
In summary, St. Paul’s postverdict Rule 50(b) motion advanced a legal argument distinct from the sufficiency-of-the-evidence claim raised in its preverdict Rule 50(a) motion. And under both Supreme Court and Tenth Circuit precedent, a failure to renew a sufficiency-of-the-evidence claim in a postverdict Rule 50(b) motion deprives the appellate court of power to review the sufficiency of the evidence at trial. Accordingly, we hold that St. Paul failed to adequately preserve a sufficiency-of-the-evidence challenge before the district court. We therefore lack the power to review the sufficiency of the evidence at this juncture. But even if we were convinced St. Paul had properly preserved a sufficiency challenge in the district court, we would nevertheless hold St. Paul had waived any sufficiency challenge by not bringing it on appeal.
2. St. Paul failed to argue sufficiency of the evidence on appeal.
We also respectfully depart from the dissent’s conclusion that St. Paul raised a sufficiency-of-the-evidence challenge on appeal. Instead, our review of the briefs to this court and counsel’s statements at oral argument convince us St. Paul did not advance such an argument in this court. Accordingly, any argument that the evidence was insufficient to support the verdict is waived. See United States v. Fisher, 805 F.3d 982, 991 (10th Cir.2015) (noting that “we routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant’s opening brief’).
In its opening brief to this court, St. Paul raised three issues. First, St. Paul argued that because its coverage position was “fairly debatable,” its decision to deny Home Loan’s claim was reasonable as a matter of law. Specifically, St. Paul advanced the legal argument that under Colorado law an insurer acts reasonably as a matter of law when it denies a “fairly debatable” claim. And based on this legal position, St. Paul argued that coverage was “fairly debatable” and therefore its denial was “reasonable as a matter of law.” This is not a sufficiency-of-the-evidence argument. Instead, St. Paul advanced the legal theory that “fair debatability” was sufficient — standing alone — to render the denial of a claim for benefits reasonable under Colorado law. Nowhere in its opening brief does St. Paul argue that, even if fair debatability is only a factor in the reasonableness analysis, the evidence is insufficient to support a finding that it acted unreasonably in denying or delaying the payment of Home Loan’s claim. Ac *1270 cordingly, St. Paul did not advance a sufficiency-of-the-evidenee challenge on appeal.
Second, St. Paul reasserted the argument made in its postverdict Rule 50(b) motion that sections 10-3-1115 and 10-3-1116 provide a remedy for unreasonable conduct in claims handling only and the evidence at trial related solely to St. Paul’s underwriting practices. As discussed, this is a legal argument about the scope of two Colorado statutes. And St. Paul did not argue that even if we disagree with its reading of sections 10-3-1115 and 10-3-1116, there was nevertheless insufficient evidence for the jury to conclude St. Paul acted unreasonably. As such, this argument is also not a sufficiency challenge.
Finally, St. Paul argues the district court improperly calculated the amount of damages recoverable for a bad faith denial of insurance benefits under section 10-3-1116. This argument is, of course, not a sufficiency-of-the-evidence claim. Thus, St. Paul did not raise a sufficiency challenge in its briefing to this court.
Moreover, at oral argument, counsel for St. Paul stated, “This case presents three questions on appeal.” Counsel went on to state, “The first question is whether ... if a claim is fairly debatable is that a complete defense to a statutory bad faith claim? The second issue is whether underwriting can form a basis for a statutory violation under [Colorado law].... The third issue is whether the double damages provision within the Colorado statute means just that, whether there is a double damages as opposed to a treble damages, or triple damages, multiplier in that penalty statute.” Counsel’s recitation of the issues at oral argument, therefore, tracks the issues as presented in St. Paul’s appellate briefs. And at no point during oral argument did counsel for St. Paul indicate the insurer was pursuing a sufficiency-of-the-evidence claim.
The dissent views this issue otherwise and concludes St. Paul is entitled to judgment as a matter of law because no reasonable jury could find the insurer acted unreasonably based on the evidence at trial.[12] We respectfully disagree and hold St. Paul did not make a sufficiency-of-the-evidence argument.
IV. CONCLUSION
For the reasons discussed, we affirm the district court on all issues.

. The Colorado Supreme Court recently issued American Family Mutual Insurance Co. v. Hansen, 375 P.3d 115, 2016 WL 3398507 (Colo.2016). One of the issues before the court was "[w]hether the court of appeals erred in perceiving a factual issue with regard to the reasonableness of the insurer's initial denial of the insured's claim, despite its assumption that the insurer’s coverage position was 'fairly debatable.’ ” Id. ¶ 21 n. 3. The Colorado Supreme Court did not ultimately reach this issue, however, because it held that the unambiguous language of the insurance contract provided the insurer with a reasonable basis for denying coverage. Id. ¶ 32.

. Because we reject St. Paul's legal argument about fair debatability, we also hold the district court properly instructed the jury as follows:
In determining whether [St. Paul] acted reasonably in denying Home Loan's claim, you may consider whether [St. Paul’s] position on the claim is fairly debatable. If you find that [St. Paul’s] position on the claim was fairly debatable, this weighs against a finding that the insurer acted unreasonably. At the same time, just because a position on a claim is fairly debatable, it does not necessarily follow that the insurance company acted reasonably. In other words, you can find that a claim is fairly debatable but that the insurance company still acted unreasonably in denying the claim.
Appellant App. at 804.

. Because the Colorado Supreme Court held that the insurance policy unambiguously identified the named insured and therefore no statutory bad faith penalty was available, it did not reach this issue in its decision. Hansen, 375 P.3d at 122, ¶ 33.

. Rule 50(a) states:
(a) Judgment as a Matter of Law.
(1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient eviden-tiary basis to find for the party on that issue, the court may:
(A) resolve the issue against the party; and
(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
(2) Motion. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

. Rule 50(b) states:
(b) Renewing the Motion After Trial; Alternative Motion for a New Trial. If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the juiy subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment — or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged — the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
(1) allow judgment on the verdict, if the jury returned a verdict;
(2) order a new trial; or
(3) direct the entry of judgment as a matter of law.

.The dissent suggests we can ignore St. Paul’s failure to comply with the requirements of Rule 50 because “there are many mandatory requirements that have been considered 'waived' or ‘forfeited.’ ” Although we sometimes exercise our discretion to forgive a party’s failure to comply with otherwise mandatory requirements, we are aware of no cases where we have entertained a sufficiency-of-the-evidence claim on appeal despite the *1266 party’s failure to comply with Rule 50. Indeed, the Supreme Court’s jurisprudence we discuss in the text here suggests a more rigid application of Rule 50.

. In addition, St. Paul must have raised the sufficiency-of-the-evidence challenge in its opening brief to this court. See United States v. Fisher, 805 F.3d 982, 991 (10th Cir.2015). We address St. Paul's failure to do so later in this opinion. See infra Part III.B.2.

. Based on this court’s precedent in Marshall v. Columbia Lea Regional Hospital, it may be that this new argument — raised for the first time at the hearing on St. Paul's Rule 50(a) motion — was not properly before the district court for purposes of a postverdict Rule 50(b) motion. See 474 F.3d 733, 738-39 (10th Cir. 2007) ("The renewed motion under Rule 50(b) cannot assert grounds for relief not asserted in the original [Rule 50(a) ] motion.”). But because resolution of this issue would not change the outcome of our analysis, we need not decide whether an argument not raised in the Rule 50(a) motion, but asserted at the Rule 50(a) hearing, is properly preserved for a later Rule 50(b) motion.

. For example, Home Loan argued it was unreasonable for St. Paul to deny coverage on the grounds that Home Loan had provided no *1268 evidence that it had care, custody, and control over the property. In support, Home Loan introduced evidence that Home Loan: (1) purchased insurance on the property, (2) paid the utilities on the property, (3) could access the property at any time, (4) was involved in efforts to sell the property, and (5) was involved in efforts to avoid foreclosure on the property. According to Home Loan, .St. Paul learned of these facts during the claims investigation, but nevertheless unreasonably denied coverage. The jury apparently agreed; the dissent does not. St. Paul acknowledged this evidence was presented to the jury but characterized it as postclaim underwriting practices and therefore irrelevant to a claim of statutory bad faith under sections 10-3-1115 and 10-3-1116.

. The dissent also argues Home Loan has conceded that St. Paul raised a sufficiency-of-the-evidence claim. Again we respectfully disagree. The dissent points to Home Loan’s characterization of St. Paul's JMOL argument as whether "the reasonableness of [St. Paul’s] conduct was properly a jury issue.” But that characterization and Home Loan's reference to St. Paul's claim at oral argument as an argument that the section 10-3-1116 claim “never should have gone to the jury,” accurately, albeit succinctly, reflect St. Paul’s legal argument. That is, St. Paul advanced a legal theory that the Colorado statutes govern only claims-investigation and payment activity and argued the evidence presented reflected only underwriting activity and therefore the evidence could not support a statutory violation. As made apparent by the thoughtful dissent, reasonable minds can disagree on this issue. But we are not convinced St. Paul argued there was insufficient evidence to support a statutoiy claim, even considering the evidence St. Paul characterizes as underwriting activity. Nor are we persuaded that Home Loan conceded the issue of preservation on this claim.

. The cases on which the dissent relies to support its conclusion that Home Loan waived any objection to St. Paul's failure to preserve a sufficiency-of-the-evidence claim in the district court are easily distinguishable. In each of those cases, the appellant raised on appeal an argument not presented to the district court, but the opposing party failed to object on preservation grounds. See Cook v. Rockwell Int’l Corp., 618 F.3d 1127, 1138-39 (10th Cir.2010); United States v. Heckenliable, 446 F.3d 1048, 1049 n. 3 (10th Cir.2006). Here, St. Paul did not raise a sufficiency-of-the-evidence challenge on appeal. See infra Part III.B.2. Absent some argument in St. Paul’s opening brief on appeal, Home Loan had no obligation to object on preservation grounds.

. The dissent also suggests that, because a motion for judgment as a matter of law under Rule 50 is, by definition, a challenge to the sufficiency of the evidence at trial, St. Paul must have intended to bring a sufficiency-of-the-evidence challenge. Although a Rule 50 motion properly challenges only sufficiency of the evidence, see Ruyle v. Cont'l Oil Co., 44 F.3d 837, 841 (10th Cir.1994) ("These motions thus challenge the sufficiency of the evidence rather than the correctness of questions of law.”), a party's failure to properly characterize the relief it seeks does not control our review. That is, "we look beyond the form of the motion to the substance of the relief requested.” See Yost v. Stout, 607 F.3d 1239, 1243 (10th Cir.2010) (internal quotation marks omitted). St. Paul's postverdict motion relied on both Rule 50 and Rule 59. Although the legal theories St. Paul now advances might be inappropriate for resolution under Rule 50, they would have been proper grounds for a new trial under Rule 59. See 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2805 ("Any error of law, if prejudicial, is a good ground for a new trial.”) (3d ed. 2015). Accordingly, we do not view the fact that St. Paul styled its motion as a Rule 50 motion or that it continues to seek JMOL as controlling. Instead, looking to the substance of St. Paul’s motion, we conclude St. Paul did not raise a sufficiency-of-the-evidence claim.